**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**THOMAS W. LAWSON,**

      **Petitioner,**

      **v.**

**WARDEN, NOBLE**
**CORRECTIONAL INSTITUTION,**

      **Respondent.**

**CASE NO. 3:22-cv-040**
**Judge Michael J. Newman**
**Magistrate Judge Elizabeth P. Deavers**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner proceeding *pro se*, has filed a petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254. This matter has been referred to the Undersigned pursuant

to 28 U.S.C. § 636(b) and this Court's General Order 22–05. Pending before the Court are the

Petition (ECF No. 1); Respondent's Return of Writ (ECF No. 10); Petitioner's Reply (ECF No.

13); and the state court record (ECF No. 9). For the reasons that follow, the Magistrate Judge

**RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED**.

The Undersigned further **RECOMMENDS** that the Court decline to issue a certificate of

appealability ("COA").

**I.**      **Procedural History**

The record reveals the following relevant procedural history, as summarized by the Ohio

Court of Appeals, Second Appellate District. *See State v. Lawson*, 164 N.E.3d 1130, 1139–41

(Ohio Ct. App. Dec. 23, 2020). On June 21, 2019, Petitioner was arrested while driving a

vehicle in Greene County in connection with an ongoing investigation in Montgomery County.[1] (ECF No. 9, PageID # 185.) Officers from Riverside, a city in Montgomery County, impounded the vehicle. (*Id.*) Petitioner told a Riverside detective that guns and drugs would be found in the vehicle. (*Id.*) After obtaining a search warrant, officers seized two firearms, a digital scale, and three baggies of drugs, later identified as 68 grams of heroin and fentanyl in one baggie; 5.5 grams of Tramadol, heroin, and fentanyl in another; and 3.6 grams of methamphetamine in the third baggie. (*Id.*)

On August 30, 2019, Lawson was indicted in Greene County for the improper handling of firearms in a motor vehicle, a felony in the fourth degree in violation of Ohio Revised Code ("O.R.C.") § 2923.16(B); possession of a fentanyl-related compound and possession of heroin, first degree felonies in violation of O.R.C. § 2925.11(A); aggravated possession of drugs and possession of heroin, third degree felonies in violation of O.R.C. § 2925.11(A); trafficking in a fentanyl-related compound and trafficking in heroin, both felonies in the first degree with firearm specifications in violation of O.R.C. § 2925.03(A)(2); and a second degree felony escape charge in violation of O.R.C. § 2921.34(A)(1). (*Id.* at PageID ## 185–86.)

At his arraignment, Petitioner pled not guilty to all counts and trial was scheduled for November 12, 2019. (*Id.* at PageID # 186.) Petitioner moved for a continuance on November 8, 2019, and trial was rescheduled for January 13, 2020. (*Id.*) The trial was rescheduled again on November 25, 2019, for a new date of February 18, 2020. (*Id.*) On January 21, 2020, Petitioner's defense counsel was suspended from the practice of law for two years. (*Id.* (citing

---

[1] The ongoing investigation in Montgomery County was unrelated to the incident at issue in the instant action. (*See, e.g.*, ECF No. 9-2, PageID # 604 ("[Prosecutor Vonderwell:] Did you have a reason to come into contact with Thomas Lawson? * * * [Deputy Majors:] I did, yes, but for another incident.")

*Dayton Bar Assn. v. Sullivan*, 158 Ohio St.3d 423, 2020-Ohio-124, 144 N.E.3d 401).)  On

January 29, 2020, an assistant public defender moved to be Petitioner's substitute counsel (*id.* at

PageID # 57), which the trial court granted on February 5, 2020.  (*Id.* at PageID # 60.)

　　　The trial court held a status conference on February 6, 2020, and the following day,

conducted a pre-trial hearing.  (*Id.* at PageID # 186.)  At the pre-trial hearing on February 7,

2020, the State offered Petitioner two plea deals, which he declined.  (*Id.* at PageID ## 186–87.)

The trial court and the parties discussed whether a continuance was needed for the scheduled

trial on February 18, 2020.  (*Id.* at PageID # 187.)  Petitioner's new defense counsel assured the

court he would be ready to proceed on that date if needed, though not to his normal standards for

preparation.  (*Id.* at PageID ## 187–88.)  The trial court allowed Petitioner time to further

consider his options and kept open the option of a continuance until the day of trial.  (*Id.* at

PageID # 188.)  The trial court also extended the time for plea deals and filing pre-trial motions,

though no additional motions were filed between the pre-trial hearing and the morning of trial.

(*Id.* at PageID ## 188–89.)

　　　On February 18, 2020, Petitioner ultimately confirmed he wanted to move forward with

trial that day, despite some reservations about how best to proceed.  (*Id.* at PageID # 189.)  The

parties discussed what charges would proceed to trial.  The trial judge called counsel to chambers

for a discussion off the record.  (*Id.* at PageID # 190.) After the brief recess, the trial court

severed the escape charge, leaving just the drugs and firearms charges to proceed, with

Petitioner's affirmative agreement.  (*Id.*)  Before the start of voir dire, Petitioner questioned

whether it was "effective fair trial" to continue with his current defense counsel, to which the

trial judge answered, "Yes."  (*Id.* at PageID 191.)  After voir dire, but before the final juror

selection, Petitioner renewed his request for a continuance, which the State opposed, and the trial

court denied. (*Id.*)

After the presentation of evidence, the jury did not reach a verdict on Count One,

improper handling of firearms in a motor vehicle, but found Petitioner guilty of all other counts.

(*Id.*) The related possession and trafficking charges merged for sentencing, and the firearms

specifications merged as well. (*Id.*) The trial court sentenced Petitioner to prison for a minimum

of 12 years and a maximum of 17.5 years. (*Id.*)

Petitioner appealed his conviction to the Second Appellate District for Ohio's Court of

Appeals and raised the following three assignments of error:

> [1] THE TRIAL COURT ERRED IN NOT GRANTING A CONTINUANCE OF
> THE JURY TRIAL AND THE MOTION TO APPOINT NEW COUNSEL.
>
> [2] APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF
> COUNSEL.
>
> [3] THE VERDICT OF THE JURY IS NOT SUPPORTED BY THE
> SUFFICIENCY OF THE EVIDENCE.

*Lawson*, 164 N.E.3d at 1135; (ECF No. 9, PageID ## 108, 115, 118.) On December 23, 2020,

the state appellate court overruled Petitioner's three assignments of error and affirmed the state

trial court's decision. *Lawson*, 164 N.E.3d at 1135; (ECF No. 9, PageID ## 184–231.)

On February 1, 2021, Petitioner filed an appeal in the Ohio Supreme Court and raised the

following three issues for review:

> <u>Proposition of Law No. 1</u>: The trial court erred in not granting a continuance of the
> jury trial and a motion to appoint new counsel.
>
> <u>Proposition of Law No. 2</u>: Appellant was denied the effective assistance of counsel.
>
> <u>Proposition of Law No. 3</u>: The verdict of the jury is not supported by the sufficiency
> of the evidence.

(ECF No. 9, PageID ## 243, 244–57.)  On April 13, 2021, the Ohio Supreme Court declined to accept jurisdiction.  *State v. Lawson*, 162 Ohio St. 3d 1422, 2021-Ohio-1201, 166 N.E.3d 15 (2021); (ECF No. 9, PageID # 307.)

On March 12, 2021, Petitioner filed a Rule 26(B) application to reopen his direct appeal. (ECF No. 9, PageID # 311.)  In his Rule26(B) application, Petitioner asserted that "Appellate Counsel was ineffective for failing to raise a Brady violation for the State's failure to disclose evidence material to [Petitioner's] guilt." (*Id.*)  On April 26, 2021, the state appellate court denied Petitioner's application to reopen.  (*Id.* at PageID ## 321–25.)  It does not appear that Petitioner appealed this decision to the Ohio Supreme Court.[2]

On February 8, 2022, Petitioner, proceeding *pro se*, sought a writ of habeas corpus pursuant to 28 U.S.C § 2254.  (ECF No. 1.)  In his petition, he raises the following grounds for relief:

> **GROUND ONE:** THE TRIAL COURT ERRED IN NOT GRANTING (1) A CONTINUANCE OF THE JURY TRIAL, AND (2) THE MOTION TO APPOINT NEW COUNSEL, IN VIOLATION OF DUE PROCESS.
>
> Supporting Facts: New counsel had been appointed through no fault of his own, and new counsel had not previously sought a continuance.  Petitioner had not seen all of the discovery, he had minimal in-person communications [with] his new counsel, and there were pretrial motions that could have been filed; [Petitioner] was not satisfied with his new counsel, any conflicts between him and his new attorney were "so great that it resulted in a total lack of communication preventing an adequate defense.["]

---

[2] In his federal habeas petition, Petitioner notes he had not presented this claim to the highest state court because "the Court of Appeals has not made a decision." (ECF No. 1, PageID # 12.) As Respondent points out, and the Undersigned recognizes, the state appellate court denied the Rule 26(B) application on April 26, 2021, which was before Petitioner filed the instant action in federal court on February 8, 2022.

**GROUND TWO:** HIS CONVICTIONS WERE BASED ON INSUFFICIENT EVIDENCE FOR TWO REASONS.

Supporting Facts: (1) There was an issue with the chain of custody of the evidence; (2) the State failed to prove that he trafficked in drugs.

**GROUND THREE:** INEFFECTIVE ASSISTANCE OF COUNSEL.

Supporting Facts: Counsel did not review discovery; counsel did not obtain potentially exculpatory videos that were in the possession of third parties; counsel did not know what charges would go forward at trial; counsel did not adequately prepare for trial; counsel failed to file pretrial motions; counsel failed to object to testimony about other investigations; counsel failed to object to references that Petitioner was in possession of "ounces" of drugs, rather than "grams" of drugs; counsel misstated the facts; counsel failed to object to testimony about jail house call.

**GROUND FOUR:** *BRADY* VIOLATION.

Supporting Facts: State withheld evidence.

(*Id.* at PageID ## 5–10.)

On June 7, 2022, Respondent filed a Return of Writ, arguing that Petitioner's claims should be dismissed either on the merits or for procedural default. (ECF No. 10.) On August 11, 2022, Petitioner filed his Reply. (ECF No. 13.) This matter is now ripe for review.

## II.    Standard of Review

The Sixth Circuit Court of Appeals relatively recently discussed the appropriate standard of review for habeas claims brought by state prisoners in *Stermer v. Warren*, 959 F.3d 704 (6th Cir. 2020):

Petitions for habeas corpus brought by state prisoners are subject to 28 U.S.C. § 2254, the modern version of which comes from the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See, e.g.*, *Northrop*, 265 F.3d at 376; *Barker v. Yukins*, 199 F.3d 867, 871 (6th Cir. 1999).  AEDPA requires habeas petitioners to exhaust their claims in state court before turning to a federal court for relief. 28 U.S.C. § 2254(b)(1)).  And if a state court decides a claim on the merits, that decision is subject to significant deference. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 101, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011); *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 592-93 (6th Cir. 2012).

For a federal court to grant relief in such a case, the state court's decision must have been "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)). Under these rules, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)). This deference applies even when the state court fails to explain its reasoning, in which case "the federal court 'must determine what arguments or theories . . . could have supported the state court's decision'" and afford those theories AEDPA deference. *Sexton v. Beaudreaux*, 138 S. Ct. 2555, 2558, 201 L. Ed. 2d 986 (2018) (per curiam) (alteration in original) (quoting *Richter*, 562 U.S. at 102). Furthermore, "evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Alvarado*, 541 U.S. at 664.

Section 2254(d) also determines which facts a federal court can consider. When assessing whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), the reviewing court "is limited to the record that was before the state court that adjudicated the claims on the merits," *Pinholster*, 563 U.S. at 181. Because of this, a district court cannot use a federal evidentiary hearing to supplement the record when assessing a claim under § 2254(d). *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 465 (6th Cir. 2012)). That said, if a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *See, e.g., Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269, 2276, 192 L. Ed. 2d 356 (2015); *Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007); *Fears v. Bagley*, 462 F. App'x 565, 574 (6th Cir. 2012); [additional citations omitted].

If a habeas petitioner satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never "adjudicated on the merits" by a state court, 28 U.S.C. § 2254(d), AEDPA deference no longer applies. Instead, the petitioner's claim is reviewed *de novo* as it would be on direct appeal. *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003). The district court would also be free to expand the record, provided that the petitioner diligently attempted to present those facts in state court (or alternatively if [he] meets AEDPA's narrow exception for evidence of actual innocence). *See, e.g., Williams v. Taylor*, 529 U.S. 420, 431-32, 437, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000); *Ballinger v. Preslenik*, 709 F.3d 558, 562 (6th Cir. 2013); *see also* 28 U.S.C. § 2254(e)(2); *Keeling*, 673 F.3d at 465.

7

*Stermer*, 959 F.3d at 720–22.

### III.    Discussion and Analysis

Petitioner filed the instant federal habeas corpus action, raising four grounds for relief. (ECF No. 1.)  Respondent asserts that all four grounds are meritless, or procedurally defaulted as an alternative contention for the fourth ground for relief.  (ECF No. 10.)  The Undersigned addresses each claim below.

### A.    Claim 1: Trial Court Error

In his first ground for relief, Petitioner asserts that the trial court erred by denying (1) a continuance of the jury trial and (2) a motion to appoint new counsel, both in violation of his Due Process rights.  (ECF No. 1, PageID # 5.)  Petitioner points out several facts in support of his claim:

> New counsel had been appointed through no fault of his own, and new counsel had not previously sought a continuance.  Petitioner had not seen all of the discovery, he had minimal in-person communications [with] his new counsel, and there were pretrial motions that could have been filed; Lawson was not satisfied with his new counsel, any conflicts between him and his new attorney were "so great that it resulted in a total lack of communication preventing an adequate defense.["]

(*Id.*)

As noted above, Petitioner claims that the trial court erred by not granting a continuance. (*Id.* at PageID # 5.)  In response to the alleged error, Respondent, providing a recitation of the state appellate court decision, notes that the court determined this claim "did not rise to the level of a due process violation."  (ECF No. 10, PageID ## 796–99 (citing *Lawson*, 164 N.E.3d at 1139–41).)  Respondent asserts that this claim is "without merit and should be dismissed," and contends that the state court decision in overruling this assignment of error was not unreasonable.  (*Id.* at PageID # 799.)

8

In Reply, Petitioner posits that the trial court abused its discretion when it failed to consider relevant factors before denying the continuance.  (ECF No. 13, PageID # 837.) Petitioner asserts that the record clearly shows that he "was upset with [his new defense counsel] and he wanted a continuance."  (*Id.* at PageID # 838.)  As support, Petitioner points to Ohio Supreme Court guidelines for appellate courts to consider "when ruling on the propriety of a request for a continuance," which questions whether Petitioner or his trial counsel "had an opportunity to make a reasonable investigation or make a reasonable decision that certain investigations were not necessary."  (*Id.* (citing *State v. Claytor*, 61 Ohio St. 3d 234, 240–41, 574 N.E.2d 472 (1991)).)

The state appellate court provided the following in rejecting Petitioner's claim:

{¶ 34} Upon review of the record, we cannot conclude that the trial court abused its discretion when it denied Lawson's motion for a continuance made at the conclusion of voir dire.  The trial court had spoken with Lawson extensively, both on February 7 and during the 50 minutes prior to the beginning of jury selection on February 18.  Although Lawson expressed his dissatisfaction with the course of his case, he did not ask for a continuance during those times, and he expressly told the court on the morning of February 18 prior to voir dire that he was ready to proceed with the trial.

{¶ 35} At one point prior to the beginning of trial, Lawson asked the trial court if he would have the same counsel if he asked for a continuance, "which I think might be the best option at this point."  The court responded that it did not know the answer and could not answer that question then.  Lawson expressed that his dilemma was based on his lack of confidence in his attorney.  The court later told Lawson that it was severing the escape charge and that trial that day would proceed on the drug and gun charges only, and it asked Lawson, "Would you like to do that, Mr. Lawson?"  Lawson responded affirmatively.

{¶ 36} The trial court could have reasonably concluded that Lawson's request for a continuance after almost two hours of voir dire was untimely and that the inconvenience to the court, the parties, and the public outweighed other considerations.  Although the trial court possibly could have proceeded with trial in another case had a continuance been granted earlier, other scheduled trials undoubtedly had been reset by the time Lawson's motion was made shortly after noon on February 18.

9

{¶ 37} We recognize that Lawson was placed in the unfortunate position of having his defense counsel changed within a month of his trial date for reasons outside of his control. New defense counsel was clear that the short timeframe until trial would hamper his preparation and that he was having difficulty with obtaining purportedly exculpatory evidence from former defense counsel. Defense counsel's statements indicated that he (counsel) believed a continuance was preferable. The trial court offered Lawson the choice to proceed with the trial date or to request a continuance prior to trial. Before trial began, Lawson himself indicated that he wanted to proceed on February 18. Once the trial process began and jury selection was almost completed, we cannot find error in the trial court's denial of Lawson's motion for a continuance, which appeared to be based simply on a change of heart about whether to proceed.

{¶ 38} The portion of Lawson's first assignment related to his motion for a continuance is overruled.

*Lawson*, 164 N.E.3d at 1141; (ECF No. 9, PageID ## 195–96.)

The state appellate court decision is neither contrary to, nor an unreasonable application of clearly established federal law. The Supreme Court has addressed the issue of continuances:

The matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence or is compelled to defend without counsel. Contrariwise, a myopic insistence upon expeditiousness in the face of a justifiable request for delay can render the right to defend with counsel an empty formality. There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. *The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.*

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964) (internal citations omitted) (emphasis added).

Further, the "denial of a defendant's motion for a continuance 'amounts to a constitutional violation only if there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *United States v. King*, 127 F.3d 483, 486–87 (6th Cir. 1997) (quoting *United States v. Gallo*, 763 F.2d 1504, 1523 (6th Cir. 1985) (internal quotation marks omitted)). "To demonstrate reversible error, the defendant must show that the denial resulted in

actual prejudice to his defense." *Id.* at 487 (quoting *Gallo*, 763 F.2d at 1523) (internal quotation marks omitted).

The facts of this case demonstrate Petitioner's choices as either continuing the trial and remaining in jail for a longer period, with the risk of being targeted as a "snitch" (ECF No. 9-2, PageID ## 418–21, 428), or moving forward on the scheduled date, knowing that his newly appointed defense counsel only had about three weeks to prepare. (ECF No. 9-1, PageID ## 368–69, 372–74.) Notably, the state appellate court recognized the difficult position Petitioner faced due to his previous counsel being suspended from the practice of law. (ECF No. 9, PageID # 196). Based on the record, however, the late-in-the-game loss of his former defense counsel does not render the trial court's decision to deny the continuance an abuse of discretion given all the circumstances including Petitioner's expressed intention to proceed.

During the pretrial hearing on February 7, 2020, the trial judge encouraged Petitioner to consider his options:

> So don't worry you upset the Court or you're creating a problem. Talk it with your -- talk about it with your lawyer and anyone else you'd like to discuss it, and then let me know; and like I said, if you want to go forward, we'll go forward. If you want a short postponement, you'll get it. Either decision is good by me.

(ECF No. 9-1, PageID ## 371–72.) The trial judge was amenable to giving Petitioner and his defense counsel more time to prepare and it seemed likely he would have granted the continuance if Petitioner made an affirmative request by or on the morning of February 18, 2020. (*See id.* at PageID ## 383–84.) On February 18, however, Petitioner affirmed he was ready to go forward with trial. (ECF No. 9-2, PageID # 410). The trial judge was reasonable in relying on Petitioner's own statement. By the time Petitioner made an express request for a continuance after the completion of voir dire (*id.* at PageID ## 562–63), the trial judge reasonably concluded that the motion was not a justifiable request for delay at that point. Further, Petitioner has not

11

shown actual prejudice, nor does he assert how a continuance would have changed the outcome of his case.

The Undersigned agrees with the state appellate court's decision in denying this claim and does not find the state court's determination unreasonable.  The state appellate court found no abuse of discretion in the denial of the continuance that Petitioner requested shortly after noon on February 18, 2020, after two hours of voir dire.  (ECF No. 9, PageID ## 195–96.)  As noted above, the state appellate court determined that the trial judge could have reasonably concluded that the request was untimely and by that point, an inconvenience to all involved.  (*Id.*)  The state appellate court decision cited to *Ungar*.  (*Id.* at PageID # 193.)  Its analysis comports with Supreme Court precedent because the court considered Petitioner's claim based on the facts of his individual case.  (*Id.* at PageID ## 193–96.)  The state appellate court decision is not contrary to, or an unreasonable application of, clearly established federal law.

Petitioner also contends that the trial court erred in failing to appoint new defense counsel.  (ECF No. 1, PageID # 5.)

In response to Petitioner's claim, Respondent merely provides a recitation of the state appellate court decision, without offering any accompanying arguments.  (ECF No. 10, PageID ## 800–02.)  Petitioner calls attention to this in his Reply, noting, "[t]he Warden simply copies and pastes the Appellate Court's decision as their argument so [Petitioner] will address those findings."  (ECF No. 13, PageID # 840.)  Focusing on the "important quote" from the state appellate court, provided below, Petitioner contends: "The idea that the record doesn't reflect [his] unwillingness to work with his attorney and that there were not any conflicts rising to the level of a prevention of an adequate defense is absurd."  (*Id.*)  Petitioner then asserts that he and

12

defense counsel "both indicate[d] the existence of mistrust and a lack of communication between them" multiple times in the record.  (*Id.*)

A major portion of the appellate decision focused on whether Petitioner even made a motion for new counsel because the State argued on appeal that he "never requested a new attorney and, therefore, it was not an abuse of discretion for the trial court to fail to appoint new counsel sua sponte."  (ECF No. 9, PageID # 197.)  Noting that the "record presents a complicated picture," the state appellate court seemed to find that Petitioner had made requests for new counsel.  (ECF No. 9, PageID ## 197–99.)  The appellate court went on to conclude:

> {¶ 48} Despite Lawson's expressed concerns, the record does not reflect that Lawson was unwilling to work with his attorney or that any conflicts between him and his attorney were "so great that it resulted in a total lack of communication preventing an adequate defense." *Jones*, 91 Ohio St.3d at 342, 744 N.E.2d 1163. That morning, Lawson and his attorney had discussed the options available to Lawson, namely the State's pending plea offer, a continuance, or proceeding to trial. Although defense counsel took issue with how Lawson, in layman's terms, described the content of their conversations, the trial court could have reasonably concluded that defense counsel could communicate adequately about the case and that defense counsel could provide effective assistance to Lawson. We cannot conclude that the trial court abused its discretion in failing to appoint Lawson new counsel on the date of trial.

*Lawson*, 164 N.E.3d at 1143; (ECF No. 9, PageID ## 199–200.)

The Sixth Amendment right to effective assistance of counsel includes the "right of a defendant who does not require appointed counsel to choose who will represent him." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 144 (2006) (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988); *Powell v. Alabama*, 287 U.S. 45, 53 (1932)).  "[A] denial of this Sixth Amendment right is a structural error not subject to harmless error analysis, but only when the denial is unjustifiable." *Dixon v. Warden, S. Oh. Corr. Facility*, 940 F. Supp. 2d 614, 625 (S.D. Ohio Jan. 7, 2013) (citing *Gonzalez-Lopez*, 548 U.S. at 148).  However, a criminal defendant's right to the attorney of his choice is "circumscribed in several important respects." *Gonzalez-Lopez*, 548

13

U.S. at 144 (quoting *Wheat*, 486 U.S. at 159). Significantly, "the right to counsel of choice does not extend to defendants who require counsel to be appointed for them." *Gonzalez-Lopez*, 548 U.S. at 151 (citations omitted).

The Sixth Circuit has held that an indigent defendant "must show good cause, such as 'a conflict of interest, a complete breakdown in communication or an irreconcilable conflict with his attorney'" to substitute counsel during trial. *Henness v. Bagley*, 644 F.3d 308, 321 (6th Cir. 2011) (quoting *United States v. Sullivan*, 431 F.3d 976, 979–80 (6th Cir. 2005)). "A complete breakdown in communication occurs when there is a severe and pervasive conflict between the defendant and his attorney, or evidence of minimal contact with the attorney rendering meaningful communication impossible." *Smith v. Bonner*, 104 F. Supp. 3d 1252, 1272 (D. Colo. 2015) (citing *United States v. Lott*, 310 F.3d 1231, 1249 (10th Cir. 2002)). Four factors should be considered when reviewing a trial court's denial of a motion to substitute counsel:

> "(1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the matter, (3) the extent of the conflict between the attorney and client and whether it was so great that it resulted in a total lack of communication preventing an adequate defense, and (4) the balancing of these factors with the public's interest in the prompt and efficient administration of justice."

*United States v. Vasquez*, 560 F.3d 461, 466 (6th Cir. 2009) (quoting *United States v. Mack*, 258 F.3d 548, 556 (6th Cir. 2001)). "If the defendant's motion would 'necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference.'" *Henness*, 644 F.3d at 321 (citing *Vasquez*, 560 F.3d at 467).

Further, a trial court's failure to inquire into an indigent defendant's request for substitution of counsel does not warrant relief under 28 U.S.C. § 2254(d)(1) because the United States Supreme Court has not held that a trial court has the duty to make such inquiry:

> For the purposes of AEDPA, . . . the clearly established law does not indicate that the trial court had a duty to conduct a good cause inquiry before determining

14

> whether to grant or deny [a] request for new counsel.  Indeed, the Supreme Court has held that the Sixth Amendment "guarantees defendants in criminal cases the right to adequate representation, but those who do not have the means to hire their own lawyers have no cognizable complaint so long as they are adequately represented by attorneys appointed by the courts." *Caplin & Drysdale*, 491 U.S. at 624.  Brooks, therefore, had a right to be represented by the counsel of his choice only if he could afford to hire that counsel, or if that counsel was willing to represent him regardless of his inability to pay.  Here, Brooks made no mention of having retained or planning to retain counsel on his own.  Instead, he requested that his court appointed lawyer be replaced.  Given these facts, the new counsel Brooks sought would have been, in all likelihood, court appointed.  To the extent that Brooks would invoke *Caplin* because his representation was inadequate, we are unpersuaded.  Nothing before us suggests that Brooks's counsel did not represent him "adequately."  *Id.*

*Brooks v. Lafler*, 454 F. App'x 449, 452 (6th Cir. 2012) (declining to grant habeas relief on the

petitioner's claim that the trial court violated his Sixth Amendment right to counsel when it

denied his request for new counsel without a sufficient inquiry into good cause); *see*

*also Peterson v. Smith*, 510 F. App'x 356, 366–67 (6th Cir. 2013) (holding that trial court's

failure to conduct inquiry into defendant's request for substitution of counsel does not provide

basis for relief under § 2254(d)(1), because no such inquiry is required by clearly established

Supreme Court precedent); *James v. Brigano*, 470 F.3d 636, 643 (6th Cir. 2006) (reversing a

grant of relief because the inquiry requirement did not constitute clearly established Federal

law); *Smith v. Bonner*, 104 F. Supp. 3d 1252, 1271 (D. Co. May 12, 2015) (citing *Peterson v.*

*Smith*, 510 F. App'x at 366) ("To date, the Supreme Court has not articulated a standard for

deciding a Sixth Amendment claim based on a habeas petitioner's allegation the trial court

denied his request for substitute counsel."); *Cantoni v. LaClair*, No. 12 Civ. 4353, 2015 WL

518226, at *2 (S.D. N.Y. Feb. 9, 2015) (citing *Felder v. Goord*, 564 F. Supp. 2d 201, 220 (S.D.

N.Y. June 23, 2008) ("[D]efendants who rely on court-appointed counsel are entitled to effective

counsel, but they 'do not have a veto over who is appointed to defend them, provided that

appointed counsel's representation is adequate.'"); *Soltero v. Kuhlman*, No. 99 Civ. 10765, 2000

WL 1781657, at *9 (S.D. N.Y. Dec. 4, 2000) ("Absent a claim of ineffective assistance, the state court's decision to deny petitioner's motion to substitute counsel conflicts neither with any particular Supreme Court decision nor with any general principle of Supreme Court jurisprudence.").

As an initial matter, it is unclear from the record whether Petitioner was at the time of trial an indigent defendant in need of appointed counsel. Petitioner was first appointed private counsel, then was subsequently appointed a public defender when his original defense counsel was suspended from the practice of law. (ECF No. 9, PageID # 57; ECF No. 9-2, PageID # 430.) In discussing whether to continue the February 18 trial, Petitioner's subsequent defense counsel noted: "He'd like to get new counsel, which I would assume that would be to retain somebody." (ECF No. 9-2, PageID # 409.) Petitioner queried to the trial court whether he would be *appointed* a new attorney if he was granted a continuance (*id.* at PageID # 430), which seems to indicate he was not planning on retaining a private attorney. For his direct appeal, Petitioner does appear to have retained private counsel (ECF No. 9, PageID # 93), but he filed the Rule 26(B) application *pro se*, including an unnotarized[3] Affidavit of Indigency. (*Id.* at PageID ## 311–14.) In the instant action, Petitioner is proceeding *pro se* and refers to being an indigent defendant within his Reply, and he does not contend that he was denied the counsel of his choice. (ECF No. 13, PageID # 840.) Noting the ambiguity, the Undersigned presumes Petitioner was indigent, and in need of court-appointed counsel for the purposes of this analysis

---

[3] Petitioner explained that the notary was out sick, and he was unable to have the Affidavit notarized in time to meet the filing deadline for his Rule 26(B) application. (ECF No. 9, PageID # 313.)

but notes in considering the relevant factors, the outcome would be the same regardless of his indigency status.[4]

The state appellate court's decision in overruling Petitioner's claim was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. While the record reflects *some* inability to communicate with his newly appointed trial counsel, the Undersigned is not persuaded that these issues were so great to prevent Petitioner from receiving an adequate defense. The trial court engaged in a lengthy colloquy with Petitioner and allowed him to express his concerns both at the pre-trial hearing and on the morning of trial. The state appellate court was reasonable in finding that the trial judge did not abuse his discretion in denying Petitioner's request for new counsel, to the extent Petitioner even made it.

With respect to the factors to consider when weighing a motion to substitute counsel, Petitioner's request for a new attorney did not appear to be a dilatory method to delay the proceedings. (ECF No. 9-1, PageID # 387.) Although Petitioner shared concerns about his newly appointed counsel, his focus was on his case as a whole and a general dissatisfaction with the process. (*See id.* at PageID ## 365, 373–73.) Rather than acknowledging issues put forth by defense counsel, including the alleged lack of communication and request for new counsel (ECF No. 9-2, PageID ## 408–10), Petitioner instead assured the trial judge he was ready to move

---

[4] The Sixth Circuit, in addressing the issue of a defendant's request for substituting *privately retained* counsel, held that where a criminal defendant alerts the court that he desires a substitution of counsel, the "court is obligated to inquire into the defendant's complaint and determine whether there is good cause for the substitution," balancing "the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice." *Benitez v. United States*, 521 F.3d 625, 632 (6th Cir. 2008) (quoting *United States v. Jennings*, 83 F.3d 145, 148 (6th Cir. 1996)) (citation omitted). "Appellate courts reviewing the denial of such a motion 'generally consider the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.'" *Id.* (quoting *United States v. Iles*, 906 F.2d 1122, 1130 n.8 (6th Cir. 1990)).

forward with trial.  (*Id.* at PageID # 410.)  If the trial court granted a continuance and subsequently appointed new counsel, the "lack of time" issue would still be present because the trial judge would have postponed the trial for just a short time.  (ECF No. 9-1, PageID ## 370, 372.)  Issues surrounding the alleged lack of communication might not be resolved with the appointment of new counsel either, considering Petitioner's reservations regarded moving forward with trial or accepting a plea deal, which would still be the same with a new attorney.  Moreover, when Petitioner asked if it was "effective fair trial" to proceed with his current counsel, the trial judge answered, "Yes."  (ECF No. 9-2, PageID ## 442–43.)  Petitioner stated, "All right," and did not respond any further (*id.* at PageID # 443), reasonably indicating to the trial judge that, even though he had reservations, Petitioner was agreeable to moving forward to trial with his current defense counsel.  Accordingly, the conflicts were not so great as to amount to a total lack of communication, preventing an adequate defense.

The state appellate court was reasonable in overruling this assignment of error on direct appeal.  In adjudicating this claim, the state appellate court considered the appropriate timeliness and communication factors.  *Vasquez*, 560 F.3d at 466; (ECF No. 9, PageID ## 196–97.)  It was reasonable to conclude that the trial court did not abuse its discretion "in failing to appoint Lawson new counsel *on the date of trial*."  (ECF No. 9, PageID ## 199–200 (emphasis added).)  In balancing the relevant factors with the timing of Petitioner's request and the public's interest in the prompt and efficient administration of justice, the trial judge reasonably concluded that substituting counsel was not warranted.  The trial judge is afforded great deference given the timing of Petitioner's request for new counsel on the morning of trial.  Under the circumstances, it was not an abuse of discretion to deny Petitioner's motion.  *Henness*, 644 F.3d at 321 (citing *Vasquez*, 560 F.3d at 467).  As noted, in this instance, the only remaining cognizable relief

clearly established by the Supreme Court lies in a failure of adequate representation.  *Brooks*, 454 F. App'x at 452 (quoting *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 624 (1989)).  Because the Undersigned, in accord with the state appellate court, does not find that Petitioner was denied the effective assistance of counsel, as detailed in the analysis of Claim 3 below, relief is not warranted.

This claim is without merit and should be dismissed.

### B.    Claim 2: Sufficiency of Evidence

In his second ground for relief, Petitioner contends that his conviction was "based on insufficient evidence for two reasons": (1) an issue with the chain of custody for evidence and (2) the State failed to prove trafficking in drugs.  (ECF No. 1, PageID # 7.)

Respondent asserts that sufficiency of evidence claims should give deference to the "trier-of-fact's verdict."  (ECF No. 10, PageID ## 803–04 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009)).)  Applying this deference with the deference afforded to state appellate courts under AEDPA, Respondent notes:

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.     This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

(*Id.* (quoting *Jackson*, 443 U.S. at 319 (internal citations omitted).)

In Reply, Petitioner notes that a federal habeas court can provide relief "if a state evidentiary ruling is so egregious that it results in a denial of fundamental fairness."  (ECF No. 13, PageID # 843.)

The state appellate court set forth the following relevant facts:

{¶ 53} Late in the evening of June 21, 2019, Deputies Michael Major and Jason Davis of the Greene County Sheriff's Office were looking for Lawson on an unrelated incident. They first attempted to locate Lawson at his residence, but he was not there. At approximately 11:30 p.m., the deputies were talking by the entrance to the Huber Mobile Home Trailer Park, in separate cruisers, when they saw Lawson enter that location in a silver Nissan Altima. Lawson passed the deputies' cruisers. The deputies followed Lawson to the furthest street. Lawson was getting out of the Altima when Deputy Major pulled up, and Deputy Davis saw him standing beside the vehicle.

{¶ 54} The deputies briefly talked with Lawson about the incident they were investigating. Deputy Major then arrested Lawson and transported him to the Greene County Jail, leaving Deputy Davis at the scene. Deputy Major did not know if the Altima was locked. Deputy Davis left shortly afterward. Davis testified that he believed the Nissan Altima was locked, but he was not certain. Davis stated on redirect examination that it was policy of the Greene County Sheriff's Office to secure legally parked vehicles when the drivers are arrested. (He stated that the vehicle would have been towed if it were not legally parked.)

{¶ 55} Deputy Davis headed "back out to Xenia to do some paperwork." As he was driving toward Xenia, he received a call from his dispatcher to contact the Riverside Police Department. Deputy Davis spoke with a Riverside officer, who wanted to know if he knew the location of Lawson's vehicle. Davis informed the officer where the Nissan was located. Based on the phone call, Deputy Davis drove to the Greene County Jail in Xenia to get the keys to the Altima from Deputy Major. Deputy Davis then headed back to the Nissan's location. Davis estimated that 15 to 20 minutes elapsed between his leaving the scene and the call from Riverside officer.

{¶ 56} Officer Robert Todd of the Riverside Police Department testified that he learned of Lawson's arrest at approximately 11:34 p.m. Shortly after that, Todd received information about the location of Lawson's vehicle, and he headed to the Huber Mobile Home Trailer Park. Officer Todd explained that Lawson was operating a vehicle that Riverside officers wanted to have towed as part of an investigation. Todd arrived at the scene approximately 10 to 15 minutes later; no other law enforcement officers were there.

{¶ 57} Deputy Davis met Officer Todd at the scene and provided him the keys to the Altima. Davis stated that it took roughly an hour to get from the location of the Nissan to Xenia and back; Davis did not know how long Todd had been waiting. Davis stated that the Nissan did not look any different when he returned. Officer Todd had not attempted to open the vehicle and did not know if it was locked.

{¶ 58} Officer Todd secured the Altima by placing evidence tape along the creases of the doors, trunk, and hood, and then initialing the tape. Officer Todd arranged

for the car to be towed to Sandy's Towing in Dayton.  The officer was aware that Lawson was not the registered owner of the vehicle.

{¶ 59} Riverside Detective Kyle Sewert spoke to Lawson.  During their conversation, Lawson told the detective that drugs and guns might be found in the silver Nissan Altima.  On cross-examination, Sewert testified that Lawson indicated that approximately two ounces of drugs were in the car.  The Riverside police obtained a search warrant for the car, and the vehicle was towed from Sandy's to the Riverside Police Department.

{¶ 60} On June 26, 2019, Detective Sewert conducted the search of the Nissan Altima.  He indicated that the vehicle was locked and had secured tape on all seams of the vehicle, including the trunk and front and rear doors.  During the search, Sewert located a firearm with a loaded magazine in the driver's door, another firearm with a loaded magazine and a round in the chamber in the trunk, a lunch pail with suspected drugs and a digital scale behind the passenger seat, and a blow torch lighter on the front passenger seat.  Sewert clarified that the lunch pail contained three separate baggies of suspected drugs.

{¶ 61} Sewert stated that he packaged the evidence, secured it in the property room of the police department, and made an inventory of the items removed from the vehicle.  He gave the firearms to the property room custodian, who is certified with firearms, to test the firearms for operability; the weapons were then secured in the firearms box.

{¶ 62} Sewert testified that the presence of a digital scale in close proximity to drugs is indicative of "selling narcotics to get proper measurements and weights of what's being distributed."  He indicated that the blow torch lighter can be used as a heat source for inhaling narcotics.

{¶ 63} Daniel Brodnick, a former police officer and then property room manager at the Riverside police station, testified about the procedures used to submit evidence to the property room and the procedures to track the submitted evidence, including assigning the evidence a specific case number and logging it with a software program.  For each item of evidence, the software included a description and quantity.  Brodnick identified the evidence submitted to the Riverside property room in this case, which included a .45 caliber Ruger pistol, a .40 caliber Ruger pistol, three baggies containing suspected drugs, a blow torch lighter, a lunch pail, and .40 and .45 caliber cartridges.

{¶ 64} Brodnick testified that he was a firearm instructor at the Riverside Police Department, and he test-fired the two Ruger pistols collected in this case at Detective Sewert's request.  Brodnick stated that both weapons operated as [they] should have; there were no malfunction problems or corrosion or other issues that would interfere with the functioning of the firearms.  He returned the guns to Detective Sewert to seal and initial and then submit into evidence.  The bullet

casings from the testing of the weapons were also submitted to the property room as evidence.

{¶ 65} On July 2, 2019, Brodnick transported the drugs and guns to BCI for analysis. After testing by BCI, Brodnick retrieved the evidence from BCI and logged it back into the Riverside property room. The guns and drugs later were released to Detective Kelly Edwards of the Greene County Sheriff's Office.

{¶ 66} Pamela Farley, a forensic scientist in drug chemistry at BCI, testified how evidence is received and tracked at BCI. Farley stated that she tested three baggies with unknown substances, which were submitted to BCI by Brodnick on July 2, 2019. The substance in the first baggie was 68.05 grams, plus or minus 0.04 grams, of a powder containing heroin and fentanyl. The second baggie contained 5.46 grams, plus or minus 0.04 grams, of a white powdery solid material containing Tramadol, heroin, and fentanyl. The third baggie contained 3.65 grams, plus or minus 0.04 grams, of a clear crystalline material found to contain methamphetamine. The evidence was returned to the Riverside Police Department.

{¶ 67} Farley testified that heroin is a Schedule I drug, fentanyl and methamphetamine are Schedule II drugs, and Tramadol is a Schedule IV drug. Farley stated that the bulk amount for methamphetamine is three grams.

{¶ 68} Detective Kelly Edwards testified that she fills in for the property room manager at the Greene County Sheriff's Office when the property room manager is on vacation. Edward[s] testified that on September 3, 2019, she received evidence from Brodnick, placed the evidence in an evidence bag, sealed the bag, and initialed it. Edwards then put the evidence in a property room locker, logged it, and generated a report. The parties stipulated to the chain of custody of that evidence after it was submitted to the sheriff's office.

{¶ 69} Captain Sean Magoteaux of the Greene County Sheriff's Office, who has experience in drug investigations, testified that the drug trade is very dangerous, and handguns frequently are found during the course of drug investigations. He stated that people carry guns for various reasons, including for self-defense or to rob others of their money and guns. Captain Magoteaux discussed the conversion of grams to ounces and testified that 77 grams, or 2.7161 ounces, of drugs were found in this case. Captain Magoteaux further testified that he had listened to recorded telephone conversations between Lawson and other individuals. During the calls, which were placed after Lawson's arrest, Lawson made statements that he took the car because the drugs were in there and he thought he could make some money. Magoteaux interpreted Lawson's statements to mean that he planned to sell the drugs that were in the car. Magoteaux also heard a phone call between Lawson and his mother in which Lawson stated that he had ruined his life for some drugs.

{¶ 70} Magoteaux acknowledged on cross-examination that he did not know how the drugs got in the vehicle or who placed them in the vehicle. Magoteaux also stated on recross-examination that a person with drugs might leave the drugs somewhere (not on their person) to protect the drugs.

{¶ 71} Magoteaux and Sewert both addressed why the charges in this case were brought in Greene County. They emphasized that Lawson and the vehicle were located in Greene County, Lawson was arrested in Greene County, and the vehicle was secured in Greene County. Sewert stated that he never saw Lawson in the Altima in Montgomery County.

{¶ 72} After deliberations, the jury found Lawson guilty of possession of a fentanyl-related compound, trafficking in a fentanyl-related compound, trafficking in heroin, aggravated possession of drugs, and two counts of possession of heroin. The jury also found Lawson guilty of the firearm specifications attached to the trafficking offenses. The jury did not reach a verdict on improper handling of a firearm in a motor vehicle.

*Lawson*, 164 N.E.3d at 1144–47 (footnotes omitted); (ECF No. 9, PageID ## 201–06.)

A criminal defendant may be convicted consistent with the United States Constitution only if the evidence adduced at trial is sufficient to justify a reasonable trier of fact to find guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. To determine whether the evidence was constitutionally sufficient to support a conviction, a court must view the evidence in the light most favorable to the prosecution. *Wright v. West*, 505 U.S. 277, 296 (1992) (quoting *Jackson*, 443 U.S. at 319). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson*, 443 U.S. at 326). "[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97 (quoting *Jackson*, 443 U.S. at 326).

Further, this Court must afford a "double layer" of deference to state court determinations about the sufficiency of the evidence. As explained in *Brown v. Konteh*, 567 F.3d 191, 205 (6th

Cir. 2009), deference must be given, first, to the jury's finding of guilt because the standard, established by *Jackson v. Virginia*, is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime beyond a reasonable doubt."  Second, and even if *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a federal habeas court "must still defer to the *state appellate court's* sufficiency determination as long as it is not unreasonable."  *Id.*; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).  This is a substantial hurdle for a habeas petitioner to overcome.

"A conviction may be sustained based upon nothing more than circumstantial evidence." *Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008) (citing *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)); *see also Gipson v. Sheldon*, 659 F. App'x 871, 877 (6th Cir. 2016) ("Circumstantial evidence is sufficient to support a conviction as long as the jury is convinced beyond a reasonable doubt." (citations omitted)).  Moreover, "a federal habeas court reviewing the sufficiency of evidence to support a conviction need not rule out all possible interpretations of the circumstantial evidence."  *Dell v. Straub*, 194 F. Supp. 2d 629, 647 (E.D. Mich. Feb. 28, 2002) (citing *Jamison v. Collins*, 100 F. Supp. 2d 647, 705 (S.D. Ohio May 10, 2000)).  Thus, a "conviction may be based upon circumstantial evidence as well as inferences based upon the evidence."  *Id.* at 647–48 (citing *Gonzalez v. Reiner*, 177 F. Supp. 2d 211, 218 (S.D.N.Y. Nov. 13, 2001) (quoting *United States v. Strauss*, 999 F.2d 692, 696 (2nd Cir. 1993)).

As noted, Petitioner asserts that the State presented insufficient evidence to support his conviction, first because of an issue with the chain of custody, and second by presenting insufficient evidence of drug trafficking.  (ECF No. 1, PageID # 7.)

Respondent contends that the state appellate court decision in overruling this claim was not unreasonable and that it should be given deference.  (ECF No. 10, PageID ## 812, 814.) Responding to Petitioner's chain of custody claim, Respondent posits that it is not cognizable under federal habeas review, or in the alternative, the claim is meritless.  (*Id.* at PageID # 811.) As support, Respondent asserts that a chain of custody issue "does not deprive a petitioner of due process and equal protection," and "can only serve as the basis for habeas relief when the petitioner shows the violation of a constitutional right recognized in clearly-established Supreme Court precedent."  (*Id.* (citing *Dudley v. Bunting*, No. 3:13-cv-058, 2013 WL 5963266 (S.D. Ohio Nov. 7, 2013) (Second Supplemental Report and Recommendation), *adopted*, 2014 WL 111137 (S.D. Ohio Jan. 10, 2014)).)  If cognizable, however, Respondent contends that the claim is meritless given the deference afforded to the state trial court decision.  (*Id.*)

Respondent also points to specific facts from the record as support that the State established sufficient evidence to support Petitioner's drug trafficking conviction.  (*Id.*) Specifically, Respondent notes the following:

1)  "Detective Sewert testified that the presence of a digital scale in close proximity to drugs indicated that the drugs were intended to be weighed and divided for sale."; and

2)  "Captain Magoteaux also testified that Lawson admitted in a phone conversation that he had taken the Altima because it contained drugs and he thought he could make money. Lawson's statement reasonably indicated that he knowingly transported the drugs in the car with the intention of selling them."

(*Id.* at PageID # 814.)  Construing the evidence in favor of the prosecution, Respondent asserts that the State presented sufficient evidence to support Petitioner's conviction and maintains this claim is meritless.  (*Id.*)

In Reply, Petitioner contends that his chain of custody claim is cognizable under federal habeas review, "but is to be reviewed with a very limited scope." (ECF No. 13, PageID # 843.) Petitioner asserts that the "reality of the situation is this: the vehicle was left unattended for close to an hour, unsecured, in a rundown area known for drug use." (*Id.* at PageID # 845.) Most of Petitioner's contentions focus on the vehicle being unattended, unsecured, and unlocked for almost an hour. (*Id.* at PageID ## 845–49.) Petitioner also alleges that he lacked the *mens rea* to support his conviction and claims that the State failed to present sufficient evidence to show he planned to traffic drugs. (*Id.* at PageID # 850.) Petitioner points out: "There is no evidence, beyond impermissibly permitted jail house calls, and the testimony of a police officer about an interview of which there is not a transcript, that demonstrates [he] knew the drugs were there." (*Id.*) Acknowledging the deference afforded to the jury's verdict, Petitioner contends that "his control over the vehicle alone is not enough" to show knowledge of the drugs. (*Id.*)

The state appellate court rejected Petitioner's claim as follows:

{¶ 79} Construing the evidence in the light most favorable to the State, we find sufficient evidence that Lawson knowingly possessed the drugs found by Detective Sewert during the search of the Altima. Prior to the search of the vehicle, Lawson told Detective Sewert that the Altima contained drugs and guns. Lawson stated in a subsequent recorded telephone call that he had taken the car because the drugs were in there and he thought he could make some money. The State thus presented evidence that drugs were located in the vehicle prior to and while Lawson was driving the car and that he knowingly possessed drugs.

{¶ 80} The search of the vehicle located a closed lunch pail with drugs inside. The lunch pail was found behind the passenger seat. No other drugs were found inside the vehicle. Sewert testified that the Altima was both locked and secured with tape when he began his search of the vehicle. The jury could have reasonably concluded that the drugs found by Detective Sewert were the drugs that Lawson had mentioned and that additional drugs were not added to the vehicle.

{¶ 81} Finally, even assuming for sake of argument that the vehicle was not locked, the evidence established that the vehicle was left unattended for a limited period of time. Deputies Major and Davis encountered Lawson at approximately 11:30 p.m. on June 21, 2019. After a brief interaction, Lawson was arrested and transported

26

to jail by Deputy Major. Davis also left the scene. Although Davis was not certain, he believed the Altima was locked. Officer Todd learned of Lawson's arrest at 11:34 p.m. on June 21; he learned of the location of the vehicle shortly thereafter. Todd headed to the Huber Mobile Home Park, arriving 10 to 15 minutes later. Deputy Davis later returned to the scene with the keys to the Altima and found Officer Todd waiting. When Davis returned, the Altima appeared to be in the same condition as when Davis had left. The timing of events further supported a reasonable conclusion that there was little likelihood that someone had tampered with the Nissan Altima between Deputy Davis's initial departure from the scene and Officer Todd's arrival.

{¶ 82} In sum, construing the evidence in the light most favorable to the State, the State's evidence was sufficient to establish that all of the drugs located during Sewert's search of the Altima were in the Altima when Lawson was driving the vehicle and that Lawson knowingly possessed those drugs.

* * *

{¶ 87} The State's evidence established that three baggies of drugs were found in a closed lunch pail in the Nissan Altima. Those baggies consisted of (plus or minus 0.04 grams): 68.05 grams of a powder containing heroin and fentanyl; 5.46 grams of a white powdery solid material containing Tramadol, heroin, and fentanyl; and 3.65 grams of a clear crystalline material found to contain methamphetamine. The bulk amount of methamphetamine is three grams. A digital scale was found with the drugs. Detective Sewert testified that the presence of a digital scale in close proximity to drugs is indicative that the drugs are intended to be weighed and divided for sale.

{¶ 88} In addition, Captain Magoteaux testified that Lawson admitted in a phone conversation that he had taken the Altima because it contained drugs and he thought he could make money. Lawson's statement reasonably indicated that he knowingly transported the drugs in the car with the intention of selling them. Construing the evidence in the light most favorable to the State, the State presented sufficient evidence that Lawson had engaged in drug trafficking.

*Lawson*, 164 N.E.3d at 1148–49; (ECF No. 9, PageID ## 208–11.)

Upon review of the record, the Undersigned does not find the state appellate court's

decision to be contrary to, or an unreasonable application of, clearly established federal law.[5] As

---

[5] The record filed did not include transcripts from the second day of trial. (*See* ECF No. 9 and attachments.) Petitioner has not raised an issue about not having these transcripts. Even without having the complete transcript, the Undersigned is satisfied that the parts of the record provided are sufficient to evaluate the reasonableness of the state appellate court's decision.

27

the state appellate court noted, it was "required to consider all the evidence admitted at trial, regardless of whether it was admitted erroneously." (ECF No. 9, PageID ## 210–11 (citations omitted) ("Whether defense counsel should have objected to any portion of Captain Magoteaux's testimony is immaterial to Lawson's sufficiency argument.").) While Petitioner focuses on the jail house calls being admitted impermissibly and pointing out there was no transcript of his admissions, the evidence is construed in the light most favorable to the prosecution. The record shows that these facts were presented at trial, without objection. (*Id.*) A reasonable fact-finder could infer that a defendant admitting he knew drugs would be in the vehicle, which were found with a digital scale nearby, coupled with the defendant telling his mother he had hoped to make money when he took the drugs, was sufficient evidence to support a conviction for trafficking in drugs.

While the record reflects ambiguity as to whether the vehicle was locked or secured during the limited time it was left unattended, the Undersigned finds that a rational fact-finder could conclude that the evidence was sufficient beyond a reasonable doubt to establish the chain of custody to support Petitioner's conviction. Officers were unsure if the vehicle was locked or unlocked. (ECF No. 9-2, PageID ## 608, 612, 626, 636.) Evidence was presented to show that the vehicle was not initially secured by police, but it was only left unattended for a short amount of time. (ECF No. 9-2, PageID ## 638–39.) Although Petitioner insists that the vehicle was left unattended for almost an hour (ECF No. 13, PageID ## 845–46), the testimony revealed that Petitioner was arrested around 11:30 p.m., Officer Todd learned of the arrest at 11:34 p.m., and shortly thereafter, Todd learned the location of the vehicle, arriving 10-15 minutes later. (ECF No. 9-2, PageID ## 637–39.) Based on this evidence, construed in favor of the State, the vehicle was unattended for approximately 30 minutes, without a clear picture if the vehicle was

28

unlocked. A trier-of-fact could make a reasonable inference that even if the car was unlocked during that time frame, the likelihood is minimal that someone else placed a lunch pail containing drugs inside the vehicle. (*See, e.g.*, ECF No. 9-2, PageID # 616 ("[State]: 'Pretty unusual for somebody with drugs to just drop them in a random vehicle; is that correct?' * * * [Deputy Major]: 'Yes, ma'am.") Even with some doubt, the jury could reasonably find that the chain of custody was sufficient to convict Petitioner.

Petitioner contends in his Reply that "[t]here is no testimony the drugs were in the vehicle already, only that [Petitioner], in an unrecorded interview that he doesn't remember giving, allegedly said the officers would find drugs in the car." (ECF No. 13, PageID # 847.) While Petitioner may not remember the conversation with Detective Sewert, based on the available record, however, Petitioner's admissions about drugs and guns in the vehicle were presented at trial, seemingly with no objection. (ECF No. 9, PageID ## 202–03, 208–09.) Again, construing the evidence in the light most favorable to the prosecution, a reasonable fact-finder could determine that the evidence presented was sufficient to convict Petitioner.

In view of the foregoing, the state appellate court's decision does not appear to be an unreasonable adjudication. The state appellate court reasonably applied the appropriate standard from *Jackson* and construed the evidence in the light most favorable to the prosecution to find that the evidence was sufficient to support Petitioner's conviction. (ECF No. 9, PageID ## 206–11); *Jackson*, 443 U.S. at 319. The state appellate court acknowledged that if the vehicle was unlocked, it was for a short period of time: "the timing of events further supported a reasonable conclusion that there was little likelihood that someone tampered with the Nissan Altima between Deputy Davis's initial departure from the scene and Officer Todd's arrival." (ECF No.

29

9, PageID # 209.)  Given the double deference afforded to the fact-finder verdict and the state appellate court decision, the Undersigned finds neither to be unreasonable.

This claim is without merit.

**C.     Claim 3: Ineffective Assistance of Counsel**

In his third ground for relief, Petitioner asserts that his defense trial counsel was ineffective.  (ECF No. 1, PageID # 8.)  Petitioner alleges eight instances of ineffective performance:  (1) counsel did not review discovery; (2) counsel did not obtain potentially exculpatory videos that were in the possession of third parties; (3) counsel did not know what charges would go forward at trial; (4) counsel did not adequately prepare for trial; (5) counsel failed to file pretrial motions; (6) counsel failed to object to testimony about other investigations; (7) counsel failed to object to references that Petitioner was in possession of "ounces" of drugs, rather than "grams" of drugs, and counsel misstated the facts; (8) counsel failed to object to testimony about jail house call.  (*Id.*)

The Undersigned addresses the Parties' contentions as individual sub-claims below.

"In all criminal prosecutions," the Sixth Amendment affords "the accused . . . the right . . . to have the Assistance of Counsel for his defence."  U.S. Const. amend. VI.  "Only a right to 'effective assistance of counsel' serves the guarantee."  *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation omitted).  The United States Supreme Court set forth the legal principles governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* requires a petitioner claiming the ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result.  *Id.* at 687; *Hale v. Davis*, 512 F. App'x 516, 520 (6th Cir. 2013).  A petitioner "show[s] deficient performance by counsel by demonstrating 'that counsel's representation fell below an

30

objective standard of reasonableness.'" *Poole v. MacLaren*, 547 F. App'x. 749, 754 (6th Cir. 2013) (quoting *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (citing *Strickland*, 466 U.S. at 687)).  To make such a showing, a petitioner must overcome the "strong[ ] presum[ption]" that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "To avoid the warping effects of hindsight, [courts must] 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689).

"Surmounting *Strickland's* high bar is never an easy task." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so ..........When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (internal citations omitted).

### 1.  Sub-claim 3.1: Counsel did not review discovery

In his first sub-claim, Petitioner contends that his defense trial counsel was ineffective for not reviewing discovery.  (ECF No. 1, PageID # 8.)

Respondent emphasizes that the state appellate court found this claim to be meritless. (ECF No. 10, PageID # 818.)  Respondent also points out that "[b]ecause the content of Lawson's and defense counsel's communications are not fully detailed in the record, the court concluded that Lawson's claim regarding lack of communication is more properly raised in a petition for post-conviction." (*Id.*)

In Reply, Petitioner cites to cases that acknowledge that "there is no constitutional duty for an attorney to share discovery documents with the defendant." (ECF No. 13, PageID # 851 (quoting *United States v. Stewart*, No. 08-124-ART, 2011 WL 382206, at *4 (E.D. Ky. Jan. 4, 2011) (internal citation omitted)).) What is overlooked by these cases, Petitioner contends, is the "fact trial judges ask, especially at plea proceedings, if a defendant has had an opportunity to review his discovery." (*Id.*) Petitioner asserts that if reviewing discovery is important in plea agreements, it is an important fact in trial settings. (*Id.* at PageID # 852.) Further, Petitioner notes that a factor in appeals or to withdraw a plea agreement focuses on the "fact counsel was *not* ineffective *because* they had reviewed discovery with their clients." (*Id.*)

The state appellate court rejected this claim as follows:

> {¶ 107} As for the alleged failure to review discovery with Lawson, Lawson stated prior to trial on February 18 that, "[a]t no point has [defense counsel] shown me the DVDs against me, nothing – none of the evidence against me." Counsel did not respond to this comment. Between September 2019 and January 2020, however, Lawson was represented by different counsel, who had received the State's discovery on October 11, 2019. At times, Lawson lamented that he did not proceed to trial with his former counsel on November 12, 2019, the original trial date. Although Lawson states that his substitute defense counsel did not review the State's discovery with him, the record does not reflect whether Lawson previously reviewed it with his former counsel, and Lawson does not articulate how he was prejudiced by defense counsel's alleged conduct. Accordingly, on this record, we cannot determine whether substitute defense counsel's alleged failure to provide Lawson with the State's discovery and to review it with him was prejudicial.

*Lawson*, 164 N.E.3d at 1153; (ECF No. 9, PageID ## 219–20.)

Because the state court only analyzed the prejudice prong, the deficiency prong is reviewed *de novo*. *Rayner v. Mills*, 685 F.3d 631, 638 (6th Cir. 2012) (citing *Davis*, 658 F.3d at 536–37) ("When a state court relied only on one *Strickland* prong to adjudicate an ineffective assistance of counsel claim, AEDPA deference does not apply to review of the *Strickland* prong not relied upon by the state court. The unadjudicated prong is reviewed de novo."); *Rompilla v.*

*Beard*, 545 U.S. 374, 390 (2005) ("Because the state courts found the representation adequate, they never reached the issue of prejudice . . . we examine this element of the *Strickland* claim *de novo*.")  With the benefit of deference afforded to defense counsel under the *Strickland* standard, the Undersigned is not persuaded that he performed deficiently.  Petitioner is not claiming that defense counsel failed to review discovery generally.  Rather, he appears to contend that defense counsel was deficient for not reviewing discovery with Petitioner himself—noting in his Reply that the "assertion of ineffective assistance due to the *sharing* of discovery is not extraordinary." (ECF No. 13, PageID # 851 (emphasis added).)  Petitioner seems to argue for a new rule, finding that trial counsel *must* review discovery with a defendant to be constitutionally effective.  This rule does not comport with the current *Strickland* standards.  *See, e.g.*, *Stewart*, 2011 WL 382206, at *4 ("The Court can find no authority suggesting that an attorney renders constitutionally ineffective assistance by failing to share discovery materials with the defendant.").

Even if Petitioner is asserting that defense counsel failed to review discovery at all, the record does not indicate defense counsel failed to do so.  (*See, e.g.*, ECF No. 9-2, PageID # 432.)  The state appellate court noted that trial counsel "did not respond" to Petitioner's comments about not showing him DVDs or other evidence against him.  (ECF No. 9, PageID # 219.)  While defense counsel may not have immediately responded to Petitioner's statements, he did address the issue later when discussing whether to move forward on the escape charge:

> THE COURT: I'll tell you what, here's, here's what I'm going to do, unless -- I'm going to say this, you tell me whether you like it or dislike it.
>
> I think the escape count, I might postpone with the other case.  What do you think about that?  That may be the easiest way to address that issue.
>
> Any, any comments one way or the other on that?  I'm not saying I'm going to do that, but I'm throwing it out as a possibility.

MR. KING: Well, I guess --

THE COURT: So we're dealing with just the events that occurred with the stop, the traffic stop.

MR. KING: Well, I guess the way I was looking at it was, is we have an issue of time here; and, you know, **we heard the thing about not seeing the videos and things like that, which there, there is some truth to that**, because I have to go through, I have to go through things and do things myself to get ready for it, and that's why we warned him at the hearing that there would be things that wouldn't be done that we would like to do before the trial.

And I guess my thinking on it was, is if anything was postponed, it would be the other things as opposed to the escape, because the escape is a much more straightforward case, and that it should probably be done first, because the evidence on it is straightforward as opposed to the others, it's far more complex.

(ECF No. 9-2, PageID ## 431–33 (emphasis added).)  Defense counsel's statement acknowledges that he did not review videos with Petitioner.  The statement indicates defense counsel did review the videos by himself to prepare for trial by stating that "I have to go through things and do things myself to get ready for it."  (*Id.* at PageID # 432.)  Defense counsel mentioned a lack of time to prepare to his own standards, meaning Petitioner was on notice that some preferred practices, like reviewing discovery together, may not be possible given the tight time constraints.  (*Id.*; ECF No. 9-1, PageID # 369 ("So, so I told my client, I've informed him that if we don't have a continuance, I won't be as prepared as I feel I should be.").)  Considering the deference afforded to trial counsel, and because it can be reasonably inferred that defense counsel at least reviewed discovery by himself, there is a strong presumption that he exercised reasonable professional judgment to help inform Petitioner's decision.  Without more, the Undersigned cannot find that defense counsel performed deficiently.

Moreover, the state appellate court reasonably applied Supreme Court precedent when it could not find prejudice.  Petitioner does not allege how he was prejudiced and does not point to

any facts that would have impacted his decision-making had defense counsel reviewed discovery with him.  On the morning of trial, defense counsel reviewed the three options with Petitioner of continuing the trial, taking the plea offer, or moving forward with trial that day.  (*Id.* at PageID # 408.)  The state appellate court reasonably found that defense counsel's alleged failure to review discovery with Petitioner was not prejudicial, and the Undersigned agrees.

This sub-claim is without merit.

### 2.  Sub-claim 3.2: Counsel did not obtain potentially exculpatory videos

In his next sub-claim, Petitioner asserts that defense counsel performed deficiently for failing to procure alleged exculpatory videos from third parties.  (ECF No. 1, PageID # 8.)

In response, Respondent points out that during the pretrial hearing on February 7, 2020, defense counsel made the trial court aware of the issue in obtaining the videos but would continue his attempts to get them.  (ECF No. 10, PageID # 819.)  Respondent also details that on the morning of trial on February 18, 2020, defense counsel again told the trial court he had trouble obtaining the videos from Petitioner's former defense counsel, who failed to respond, and from a third party, who denied having a copy.  (*Id.*)  Respondent notes that the state appellate court could not review the claim on direct appeal and suggests that the court found the claim to be meritless.  (*Id.*)

Petitioner replies by asserting that the state appellate court and Respondent's position that his claim is meritless and cannot be reviewed because the videos are not in the record only bolsters his claim: "The only reason the potentially exculpatory videos are not in the record is because [defense counsel] failed to obtain them."  (ECF No. 13, PageID # 852.)  Petitioner also notes that defense counsel mentioned a need for the trial court's assistance in compelling third parties to release the videos.  (*Id.*)  Petitioner concedes that "some effort was made to obtain the

videos," but those efforts, he contends, were "not nearly enough" to be effective assistance of counsel. (*Id.*)

The state appellate court rejected Petitioner's claim as follows:

{¶ 108} Next, Lawson claims that counsel rendered ineffective assistance by failing to obtain exculpatory videos. On February 7, 2020, defense counsel told the trial court that he was having trouble getting potentially exculpatory videos from original defense counsel and would try to obtain the videos from other individuals, including another lawyer. On February 18, the trial date, defense counsel informed the court that he had tried to obtain the potentially exculpatory videos from two sources, but one (the lawyer) did not respond and the other denied that he had a copy of the video. Those videos, assuming they exist, are not part of the record on appeal. Without the videos, we cannot determine whether the videos would have affected the outcome of the trial and thus whether Lawson was prejudiced by defense counsel's failure to obtain them and use them at trial. Again, this claim cannot be reviewed on direct appeal.

*Lawson*, 164 N.E.3d at 1153–54; (ECF No. 9, PageID # 220.)

Respondent contends that the state appellate court found this claim to be meritless. It is, however, not clear whether the state court decision was an adjudication on the merits. The state appellate court noted that because the videos in question were not in the record, it could not "determine whether the videos would have affected the outcome of the trial," and therefore could not determine if Petitioner was prejudiced by defense counsel's failure to obtain the videos for trial. (ECF No. 9, PageID # 220.) Though the state court could not determine prejudice without the videos and found that the claim "cannot be reviewed on direct appeal," the court seemingly did not find that defense counsel performed deficiently. Based on the record before it, the court could not find prejudice. (*Id.*) To the extent that the state appellate court adjudicated this claim on the merits, the Undersigned does not find the court's decision to be unreasonable.[6]

---

[6] The Undersigned notes that it does not appear that Petitioner ever filed a postconviction action. Although that remedy remains technically available, any postconviction action would be untimely and it is highly unlikely that Petitioner would be able to satisfy the jurisdictional requirements for filing an untimely postconviction action. Ohio Rev. Code Ann. 2953.23. That

The state appellate court noted that defense counsel made attempts to obtain the alleged exculpatory videos. (*Id.*; ECF No. 9-1, PageID ## 385–89; ECF No. 9-2, PageID ## 441–42.) During the pre-trial hearing, defense counsel shared with the trial court: "The hope is that we'll get it from one of these alternative sources of it.  He's made several copies.  It's a matter of whether any of those are still --." (ECF No. 9-1, PageID # 388.)  Petitioner then cut in and claimed that two attorneys had the videos. (*Id.*)  Petitioner noted that his former attorney Anthony Sullivan, who was suspended from the practice of law, had the videos. (*Id.*)  Petitioner also noted that his original defense counsel, Dennis Lieberman, had the videos, who was willing to turn over "100 percent of what he has." (*Id.* at PageID ## 388–89.)  The morning of trial, defense counsel wanted to make a record of his attempts to obtain the videos, including that he "made the request" to Lieberman, whom he did not hear back from, and contacted a Mr. Grahams, who "denied having any such video." (ECF No. 9-2, PageID ## 441–42.)  Defense counsel also sought assistance from Petitioner's mother to obtain the videos. (ECF No. 9-1, PageID # 385.)

Although defense counsel indicated during a pre-trial hearing that he might require the trial court's assistance in obtaining the videos (*id.*), it is reasonable to presume from counsel's failure to seek further assistance that counsel ultimately deemed the videos to be of no value.  In

---

said, because the Undersigned finds the claim to be without merit, it is not necessary to determine exhaustion. *See Edgar v. Metrish*, No. 07-12691, 2009 WL 152145, at *2 (E.D. Mich. Jan. 21, 2009) ("[T]he exhaustion requirement is not a jurisdictional one," *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005), and courts need not address a procedurally defaulted issue before deciding against a petitioner on the merits. *Mahdi v. Bagley*, 522 F.3d 631, 635 (6th Cir. 2008) (quoting *Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S. Ct. 1517, 137 L.Ed.2d 771 (1997)).  Consequently, the Court will proceed to address the substantive merits of Petitioner's claims rather than analyzing whether the claims are exhausted or procedurally defaulted.")

his efforts to obtain the videos, defense counsel may have learned that the videos either did not

exist or were destroyed (*see, e.g.*, *id.* at PageID # 385), or alternatively, that the videos in fact

were not exculpatory and any further attempt to procure them as evidence would do more harm

than good for Petitioner's case.  These are reasonable trial strategies that are afforded great

deference.  *Bigelow*, 576 F.3d at 287; *Carter v. Bogan*, 900 F.3d 754, 773 (6th Cir. 2018)

(quoting *Harrington*, 562 U.S. at 105) ("In other words, rather than simply examining whether

counsel satisfied *Strickland*'s deferential standard, we ask 'whether there is *any reasonable

argument* that counsel satisfied *Strickland*'s deferential standard.'" (emphasis added)).  The state

appellate court's decision was reasonable because it analyzed this claim by applying the

*Strickland* standard to show defense counsel made reasonable attempts to procure the videos.

Moreover, the state appellate court was reasonable in finding that Petitioner was not prejudiced

based on the record before it, albeit without the videos.

Alternatively, because the state appellate court noted it could not review the claim on

direct appeal, it is within the province of this Court to review the claim *de novo*.  *See Howard v.

Bouchard*, 405 F.3d 459, 467 (6th Cir. 2005) ("Where the state court has not addressed or

resolved claims based on federal law, most courts, including this one, have held that the decision

is not an 'adjudication on the merits.'  Thus, a federal habeas court reviews such unaddressed

claims de novo." (citation omitted)).  But even under *de novo* review, in light of the deference

*Strickland* requires, the claim fails.

Defense counsel did not perform deficiently with respect to his efforts to procure the

videos from the supposed sources.  Though Petitioner posits that the only reason the videos are

not in the record is due to defense counsel's failure to obtain them, he had the opportunity to

seek state postconviction relief to develop the record to properly address this claim.  As noted

38

above, defense counsel made reasonable attempts to obtain the videos.  Accordingly, the Undersigned finds that his performance reflects reasonable professional assistance.

The record does not reveal what exactly the videos contained that would support Petitioner's defense and ultimately change the outcome of his trial.  Petitioner shared with the trial court that the videos were surveillance of his property that "could be valuable to both cases based on the fact that what they're saying -- * * * what I'm accused of."  (ECF No. 9-1, PageID # 387.)  Apart from this cursory and speculative statement, Petitioner does not detail any additional facts from the videos that support his claim; nor does he shed light on these details in the instant action.  (ECF No. 13, PageID ## 852–53.)

What the record does reveal, however, is that Petitioner was arrested while driving a vehicle that contained multiple types of drugs, a digital scale, and firearms.  (ECF No. 9, PageID # 185.)  Petitioner's own admissions were presented at trial as support that he had knowledge of the drugs and the intention to sell them.  (ECF No. 9, PageID ## 202–03, 205–06.)  As analyzed in Claim 2 above, the State presented sufficient evidence to convict Petitioner on the related charges.  Moreover, the Undersigned cannot speculate as to what the videos contained to rebut the State's evidence.  The Undersigned is not persuaded, without more, that there is a reasonable probability the outcome of Petitioner's case would have been different had the videos been obtained.  Accordingly, based on *de novo* review of the state court record, Petitioner was not prejudiced by the failure to obtain the alleged exculpatory videos.

Whether the state appellate court is afforded deference, or the claim is reviewed *de novo*, the Undersigned finds the claim to be meritless.

This sub-claim should be dismissed.

### 3. Sub-claim 3.3: Counsel did not know what charges would go forward

Petitioner next asserts that defense counsel was ineffective for not knowing what charges would go forward on the day of trial.  (ECF No. 1, PageID # 8.)  Respondent, reciting the decision from Petitioner's direct appeal, contends the state appellate court found this claim to be meritless.  (ECF No. 10, PageID ## 819–20.)

In Reply, Petitioner again posits that defense counsel was ineffective for not knowing the "charges he was facing at trial." (ECF No. 13, PageID # 853.)  As support, Petitioner points out that defense counsel "admitted, due to plea negotiations and the lack of a ruling on the motion to sever, he did not know exactly what charges would go forward the day of trial, despite [Petitioner] having it made clear he was not going to accept a plea." (*Id.*)  Relying on *United States v. Cronic*, 466 U.S. 648 (1984), Petitioner asserts that prejudice should be presumed because "an attorney's confusion concerning the criminal charges is tantamount to a complete denial of counsel during a critical stage of the criminal proceedings." (ECF No. 13, PageID # 853.)

The state appellate court rejected this claim as follows:

{¶ 109} Lawson asserts that his counsel was deficient because he did not know what charges would go forward on the day of trial.  That assertion oversimplifies the record.  On February 18, 2020, Lawson appeared for trial on the eight charges indicted in this case.  The same day, defense counsel filed a motion to sever Count Eight, escape.  The trial court, Lawson, defense counsel, and the prosecutor had a lengthy discussion about whether the escape count should be severed and which charges of the indictment, if any, should proceed to trial that day.  Prior to the beginning of voir dire, Lawson had elected to proceed to trial, the trial court severed the escape charge, and the court ruled that trial would proceed on the drug and gun charges (Counts One through Seven).  Although there was some discussion about which charges would proceed to trial on February 18, there is no indication that defense counsel was confused about the charges and acted deficiently.

*Lawson*, 164 N.E.3d at 1154; (ECF No. 9, PageID ## 220–21.)

The state appellate court reasonably applied the *Strickland* standard in analyzing whether defense counsel performed deficiently.  The court recognized that defense counsel filed the motion to sever the escape charge and engaged in a "lengthy discussion" with the prosecutor about whether to sever the charge.  The court then reasonably concluded that nothing indicated defense counsel was "confused about the charges and acted deficiently." (ECF No. 9, PageID # 221.)  Though it was not settled what charges would move forward the day of trial, as evidenced by the motion to sever (ECF No. 9-2, PageID ## 424–25, 431), defense counsel knew the potential charges.  (*Id.* at PageID ## 433–34.)  Notably, defense counsel suggested moving forward on only the escape charge, as it was a more "straightforward" matter (*id.* at PageID ## 432–34), further showing that he was not unaware or confused about Petitioner's charges.  Defense counsel advocated to focus on the escape charge and continue the other charges to allow more time to prepare, which points to using reasonable professional judgment on how to best proceed for Petitioner.

On direct appeal, Petitioner made a general assertion that prejudice should be presumed in his case (ECF No. 9, PageID # 212), which he reiterates in the present claim.  (ECF No. 13, PageID # 853.)  Although the state appellate court's analysis of presumed prejudice was not specific to this allegation, the court reasonably concluded that prejudice should not be presumed in this case, correctly applying the standard set forth in *Cronic*.  Specifically, the court noted in this regard:

> {¶ 91} We begin with Lawson's assertion, emphasized in his reply brief, that the short time period between defense counsel's formal appointment on February 5 and trial on February 18 was presumptively prejudicial and resulted in the denial of his Sixth Amendment right to counsel.
>
> {¶ 92} The United States Supreme Court has described the essence of the right to the effective assistance of counsel as "the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing."

41

*United States v. Cronic*, 466 U.S. 648, 656, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984). The Court continued: "When a true adversarial criminal trial has been conducted — even if defense counsel may have made demonstrable errors — the kind of testing envisioned by the Sixth Amendment has occurred.  But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated." (Footnotes omitted.) *Id.* at 656-57.

{¶ 93} The defendant generally bears the burden to establish that he or she was prejudiced by counsel's conduct.

> Nonetheless, *Cronic* recognized that some circumstances are so likely to prejudice the defendant that no showing or prejudice is necessary.  These include "the complete denial of counsel * * * at a critical stage of [the] trial" and the complete failure of counsel "to subject the prosecution's case to meaningful adversarial testing."  "Ineffectiveness is also presumed when counsel 'actively represented conflicting interests."  Also included are such extreme cases as *Powell v. Alabama* (1932), 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158, where defense counsel was appointed only a few minutes before the trial commenced.

> "Apart from circumstances of that magnitude, however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."

(Citations omitted.)  *State v. Sanders*, 92 Ohio St.3d 245, 277, 750 N.E.2d 90 (2001), quoting *Cronic*.  Only when the surrounding circumstances make it "so unlikely that any lawyer could provide effective assistance is prejudice "presumed without inquiry into actual performance at trial."  *Cronic* at 661.

* * *

{¶ 100} In this case, the assistant public defender sought to be substituted as defense counsel on January 29, 2020, three weeks before the trial date.  On February 4, 2020, prior to the trial court's action on that motion, the assistant public defender signed a request for discovery and acknowledgement of receipt of discovery from the State.  The State served the assistant public defendant [sic] with its motion to sever Case No. 2019-CR-508 from Case No. 2019-CR-555 (this case).  On February 5, the assistant public defender received plea offers from the State.  The court filed its entry approving the substitution of counsel on the same day (February 5, 2020).

{¶ 101} At the February 7 hearing, new defense counsel informed the court that he had spoken with Lawson at the jail and conveyed the State's plea offers.  Lawson also stated that he had spoken with his attorney that morning about the pros and

cons of those offers.  Defense counsel acknowledged at the hearing that he had received discovery from the State; counsel was having difficulty obtaining purported exculpatory evidence, which the State did not have, from former defense counsel.  Counsel told the court that he would try to obtain that evidence from alternate sources.  (Those efforts were unsuccessful.)

{¶ 102} Lawson informed the trial court on February 7 that he wanted to proceed with the February 18 trial date.  When the trial court asked defense counsel if he would be prepared on February 18, counsel responded that he "can be ready," although not "to the standard that I would hold myself to be ready for trial in this short amount of time."  Counsel noted the extensive discovery he needed to review. Counsel told the court that he would "do everything I can – basically there's only so many hours in the day is what I'm saying * * *.  As you know, trials of this, you type of crime of this nature, we normally have a lot more advance than two weeks."

{¶ 103} Lawson went to trial on seven counts, including first-degree felony offenses, but all of the offenses stemmed from the presence of drugs and guns in the vehicle that Lawson had been driving.  Although defense counsel apparently had substantial discovery to review, the factual circumstances were not complex. While defense counsel would have liked additional time to prepare for trial, he indicated that he would work hard to be ready and "can be ready."  The record shows that defense counsel had minimal communication with Lawson between his appointment and trial, but there was nothing in the circumstances of counsel's appointment that made the lack of communication inevitable.  Although not ideal, the circumstances did not make it unlikely that Lawson could have received the effective assistance of counsel.  In short, the circumstances in this case did not rise to the magnitude of creating a presumption of prejudice.

*Lawson*, 164 N.E.3d at 1149–52 (footnotes omitted); (ECF No. 9, PageID ## 212–18.)

The state appellate court reasonably determined that the circumstances surrounding Petitioner's case, while not ideal, were not of a magnitude to presume prejudice, correctly applying *Cronic*.  As noted by the court, the facts of Petitioner's case were not complex (ECF No. 9, PageID # 217), and although defense counsel was substituted a few weeks before scheduled trial (*id.* at PageID # 216), nothing indicates that the circumstances made it likely Petitioner would not receive effective assistance of counsel.  The state appellate court declined to find presumed prejudice, and the Undersigned agrees with its reasonable application of *Cronic*.

Accordingly, the Undersigned finds that the state appellate court decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Even analyzing the prejudice prong *de novo*, the Undersigned is not persuaded that Petitioner was prejudiced by any confusion or failure to understand the charges.  Defense counsel understood the charges and recommended the way he thought was best to proceed.  (*Id.* at PageID ## 432–34.)  *Petitioner* ultimately decided to move forward with trial on the drug and possession charges that day, and the escape charge was severed with his express agreement.  (*Id.* at PageID # 438.)  Petitioner has not shown to a reasonable probability that but for defense counsel being confused about the charges, the outcome would be different.

This sub-claim is without merit and should be dismissed.

### 4.  Sub-claim 3.4: Counsel did not adequately prepare for trial

In his next sub-claim, Petitioner posits that defense counsel was not adequately prepared for trial.  (ECF No. 1, PageID # 8.)

In response, Respondent relies on the state appellate court decision.  (ECF No. 10, PageID ## 820–21.)  Respondent notes that the state appellate court "could not conclude based on the record before it that counsel failed to prepare adequately for trial," and asserts that the court found the claim to be without merit.  (*Id.* at PageID # 821.)

In reply, Petitioner contends that the "clear showing of incompetence stems from [defense counsel's] failure to make any kind of factual investigation prior to trial."  (ECF No. 13, PageID # 854.)  Petitioner lists ways in which defense counsel allegedly failed to adequately prepare for trial, including being "unable to discuss the facts of the case with his client and only gave him options for how to move forward…not any information that would help inform [Petitioner's] decision."  (*Id.*)  Petitioner points back to his claim that defense counsel failed to

obtain potentially exculpatory videos, asserting that defense counsel was negligent for waiting to inquire about the videos at the "eleventh hour." (*Id.*) Petitioner contends that defense counsel could have filed a motion to compel, subpoenaed the third parties as witnesses, or at least interviewed the individuals who had the videos. (*Id.*)

The state appellate court rejected Petitioner's claim as follows:

{¶ 116} Lawson raises that his trial counsel stated that he would not be as prepared for trial as he normally would be. We cannot conclude, based on this statement alone, that defense counsel was so unprepared that he failed to provide effective assistance as contemplated by the Sixth Amendment. Counsel told the trial court on February 7 that he would do his best to prepare for trial in the time available, and we find nothing to suggest that defense counsel did otherwise.

{¶ 117} In addition, defense counsel developed a defense theory based on the time that the Altima was left unattended by law enforcement officers and a discrepancy between the amount of drugs found in the vehicle and the amount that Lawson had said would be there. Counsel cross-examined the State's witnesses to elicit testimony to support that defense theory. Specifically, defense counsel elicited testimony that Deputies Davis and Major were not certain if Lawson's vehicle was locked when they left the scene, that the vehicle was unattended when Officer Todd arrived, and that Officer Todd did not know if the vehicle was locked. As for the amount of drugs involved, Captain Magoteaux indicated that 77 grams (the approximate amount of drugs located in the Nissan) equals 2.7161 ounces. Magoteaux acknowledged on cross-examination that the difference between 2 ounces (or 56.7 grams), the amount Lawson said would be found in the vehicle, and 2.7 ounces (77 grams) was around 30 percent of the amount, which could be significant. Finally, we note that the jury could not reach a verdict on Count One and that charge was dismissed. We cannot conclude, on this record, that counsel failed to prepare adequately for trial.

*Lawson*, 164 N.E.3d at 1155; (ECF No. 9, PageID ## 223–24.)

While the state appellate court could not "conclude" whether defense counsel failed to adequately prepare based on the record before it, the Undersigned finds that the court still adjudicated this sub-claim on the merits. The state appellate court applied the *Strickland* standard in overruling this claim, which was a reasonable determination.

The state appellate court did not find deficient performance, and the Undersigned agrees. Defense counsel, while pointing out he did not have as much time to prepare to *his own standards*, assured the trial court that he would be ready to proceed with trial.  (ECF No. 9-1, PageID ## 368–69.)  As the state appellate court noted, defense counsel also prepared an adequate "defense theory based on the time that the Altima was left unattended by law enforcement officers and a discrepancy between the amount of drugs found in the vehicle and the amount that Lawson had said would be there."  (ECF No. 9, PageID # 223.)  Moreover, the jury did not reach a verdict on the charge for mishandling a firearm in a motor vehicle (Count 1), and the charge was dismissed.  (*Id.* at PageID ## 223–24.)

Additionally, Petitioner fails to show how he was prejudiced by the alleged deficient performance and how the outcome would have changed had defense counsel prepared differently.  Petitioner asserts that defense counsel could have engaged in a more extensive factual investigation but does not indicate how it would have created a reasonable probability that but for the failure to investigate, the outcome of the case would have been different.  (ECF No. 13, PageID ## 854–55.)  The record does not indicate that defense counsel failed to reasonably prepare.  Further, defense counsel assured the trial court he would do his best to prepare, as addressed by the state appellate court.  (ECF No. 9, PageID ## 223–24 ("[W]e find nothing to suggest that defense counsel did otherwise.")  To the extent Petitioner contends that prejudice should be presumed, pointing to *Cronic* as support,[7] the state appellate court

---

[7] Petitioner's Reply combined two claims to respond to Respondent's Return: "Unawareness of Charges and Inadequate Preparation."  (ECF No. 13, PageID ## 853–55.)  Petitioner specifically noted that prejudice should be presumed when defense counsel is confused about the criminal charges.  It is unclear if Petitioner also intended to assert presumed prejudice for the "inadequate preparation" sub-claim.  (*Id.* at PageID # 853.)  Either way, the Undersigned does not find that the claim warrants presumed prejudice.

reasonably determined that "the circumstances in this case did not rise to the magnitude of creating a presumption of prejudice" when it applied *Cronic* in Petitioner's direct appeal. (ECF No. 9, PageID ## 217–18.) The Undersigned is not persuaded, given the deference to both defense counsel's performance during trial and the state appellate court's review of his performance on direct appeal, that overruling this claim was unreasonable.

This ineffective assistance sub-claim is without merit.

### 5.  Sub-claim 3.5: Counsel failed to file pretrial motions

Petitioner asserts that defense counsel was ineffective for failing to file pretrial motions. (ECF No. 1, PageID # 8.) Relying on the state appellate court decision, Respondent notes that the court "found no indication that, if defense counsel had filed a motion to suppress and other motions, they would have been successful." (ECF No. 10, PageID ## 821–23.)

Petitioner does not seem to include additional arguments regarding this claim in his Reply, though some of his assertions in other sub-claims appear to address issues related to the failure to file pretrial motions. (ECF No. 13.) For example, Petitioner notes that defense counsel was ineffective for failing to file a motion to compel to help obtain the alleged exculpatory videos (*id.* at PageID # 838), a motion in limine about the other criminal investigations against him (*id.* at PageID # 857), or a motion to suppress evidence. (*Id.* at PageID # 859.) Because the analysis of the motion to compel and the motion in limine are incorporated in the analysis of other sub-claims (sub-claims 3.2 and 3.6), the Undersigned focuses only on the motion to suppress here.

The state appellate court rejected this alleged failure as follows:

{¶ 110} Lawson further states that defense counsel should have filed a motion to suppress evidence prior to trial. During the pretrial discussion on February 18, Lawson argued that the drugs were not lawfully found as part of the execution of a search warrant on an arson investigation out of Montgomery County. In response,

the prosecutor stated, "Your Honor, that would have been an appropriate Motion to Suppress. None has been made. They've waived that issue at this point." Defense counsel stated, "* * * [T]hat was one of the Motions to Suppress we were talking about."

{¶ 111} "The failure to file a motion to suppress constitutes ineffective assistance of counsel only when the record establishes that the motion would have been successful if made." *State v. Wallace-Lee*, 2d Dist. Greene No. 2019-CA-19, 2020-Ohio-3681, ¶ 53. The state did not offer the search warrant as an exhibit at trial, and it is not in the record. Consequently, we cannot determine, on this record, whether a motion to suppress the guns and drugs located based on the search warrant would have been successful. Moreover, upon consideration of the evidence presented at trial, we find no basis to conclude that a motion to suppress the guns and drugs otherwise would have been successful.

*Lawson*, 164 N.E.3d at 1154; (ECF No. 9, PageID # 221.)

The Undersigned finds that the state appellate court decision on this sub-claim was a reasonable determination. "Failure to file a motion to suppress may be ineffective assistance," but is "not ineffective assistance *per se*." *United States v. Thomas*, 38 F. App'x 198, 201 (6th Cir. 2002) (citing *Kimmelman v. Morrison*, 477 U.S. 365 (1986)); *Tyson v. United States*, No. 2:15-cv-550, 2017 WL 1281321, at *17–18 (S.D. Ohio Apr. 6, 2017). The Sixth Circuit has noted:

> [W]here a suppression motion would be successful, an attorney is guilty of ineffective assistance if he does not file the motion on time........Conversely, if such a motion would fail, counsel may not be criticized for having accurately assessed his client's chances of successfully challenging the warrant. ...... Thus, whether trial counsel.......acted incompetently in not filing a timely motion to suppress depends upon the merits of the search and seizure question.

*Thomas*, 38 F. App'x at 201 (quoting *Worthington v. United States*, 726 F.2d 1089, 1093 (6th Cir. 1984) (J. Contie, concurring) (internal citations omitted)). Here, the state appellate court could not determine whether a motion to suppress would have been successful based on the record before it, but the appellate court, in reviewing the evidence presented at trial, found no basis that such a motion would have succeeded. (ECF No. 9, PageID # 221.)

The state appellate court reasonably applied *Strickland* and analyzed whether the motion would be successful under the appropriate test.  The record shows that a motion to suppress was considered after Petitioner questioned how an arson warrant would include "any drugs and weapons that are not currently being investigated."  (ECF No. 9-2, PageID # 437.)  The State responded by noting, "Your Honor, that would have been an appropriate Motion to Suppress. None has been made.  They've waived that issue at this point."  (*Id.*)  Defense counsel shared: "And that -- your Honor, and that was, that was one of the Motions to Suppress we were talking about."  (*Id.* at PageID ## 437–38.)  The trial judge then called counsel to his chambers for an off the record conversation.  (*Id.* at PageID # 438.)  It is reasonable to presume that they addressed the motion to suppress at that point.

Given the fact that defense counsel was aware of a potential need to file a motion to suppress, but subsequently did not do so, it is reasonable to infer from the record that he made a strategic decision not to file the motion.  The record does not indicate that a motion to suppress would have been successful, much less show that defense counsel performed deficiently in failing to file one.  Further, because the motion to suppress was not likely to be successful, Petitioner was not prejudiced.  Petitioner was the sole driver of the vehicle and was the only one in possession of the vehicle's contents, which was bolstered by his admission that drugs and firearms would be found in the vehicle (ECF No. 9, PageID # 185), and by the comments to his mother that he hoped to make money.  (*Id.* at PageID ## 205–06.)  Accordingly, the Undersigned finds that the state appellate court decision was not an unreasonable application of clearly established Supreme Court precedent.

This sub-claim is without merit.

### 6. Sub-claim 3.6: Counsel failed to object to testimony about other investigations

In his next sub-claim, Petitioner posits that defense counsel was ineffective for failing to limit testimony about other criminal investigations. (ECF No. 1, PageID # 8.)

In response, Respondent relies on a recitation of the state appellate court decision and notes that the court found the claim to be meritless. (ECF No. 10, PageID ## 822–23.)

Petitioner replies that defense counsel should have limited all testimony about "prior bad acts" under Federal Rules of Evidence 404(b). (ECF No. 13, PageID # 856.) Petitioner contends that the information was not "kept to the bare essentials," as noted by the state appellate court and by Respondent. (*Id.*) Claiming the "government's argument is flawed," Petitioner maintains that "[d]etails *were* given about the arrest, not simply just that it occurred" because witness testimony referred to him "being arrested on suspicion of arson . . . without any further explanation." (*Id.*)

The state appellate court rejected this claim as follows:

{¶ 112} Lawson further claims that defense counsel acted deficiently by failing to file a motion in limine regarding other pending criminal investigations in which Lawson was a suspect. (A motion in limine is a pretrial motion that asks a trial court to limit or exclude the use of evidence which the movant believes to be improper. *See Feight v. Brooks*, 2d Dist. Montgomery No. 28684, 2020-Ohio-5205, ¶ 27.) Lawson also asserts that counsel should have objected to testimony about those investigations at trial.

{¶ 113} The record does not support a conclusion that Lawson was prejudiced by the absence of a motion in limine or that counsel acted deficiently at trial with respect to evidence of other criminal investigations. The State's references to other criminal investigations involving Lawson were kept to the bare essentials, namely that deputies located Lawson as part of an unrelated investigation and that Riverside police department wanted to have Lawson's vehicle towed as part of an investigation. The State did not attempt to elicit testimony about the criminal offenses involved in those investigations or about the course of those other investigations.

50

{¶ 114} The only reference to the nature of the Riverside investigation occurred during Todd's testimony.  At the beginning of Todd's testimony, the State asked him why he had come into contact with Deputies Davis and Major.  Todd began to answer, "There was an arson that had occurred at --."  The prosecutor cut off Todd's answer, saying, "Well, I'm going to stop you there."  Defense counsel also started to object, stating, "Objection.  Okay.  I'm sorry.  You got it."  The prosecutor then asked Todd if he had to respond to the Huber Mobile Home Park, telling him to answer "without saying specifically why you were responding."  (Trial Tr. at 217.)  No other references were made by the State's witnesses about the specifics of the unrelated Greene County or Riverside investigations.

{¶ 115} During redirect examination of Todd, the prosecutor asked him if he had received any information that the vehicle Lawson was driving was stolen.  Defense counsel objected to that question, and the trial court sustained the objection.  (Trial Tr. at 236.)  Upon review of the trial transcript, defense counsel did not act deficiently with respect to evidence regarding other criminal investigations.

*Lawson*, 164 N.E.3d at 1154–55; (ECF No. 9, PageID ## 221–23.)

Though Petitioner contends that witness testimony was elicited to show he was "arrested on suspicion of arson," the record reflects a different exchange.  Direct examination of Officer Todd by Prosecutor Vonderwell revealed the following "bare essentials" of other criminal investigations:

Q. Okay.  I'm going to direct your attention to Friday, June 21, 2019.  Were you on duty that day?

A. Yes, I was.

Q. And did you have reason to come into contact with Greene County Sheriff's Deputies, Jason Davis and Deputy Major?

A. Yes, I did.

Q. And why did you come into contact with them?

A. There was an arson that had occurred at --

Q. Well, I'm going to stop you there.

**Mr. King: Objection.  Okay.  I'm sorry.  You got it.**

By Ms. Vonderwell:

51

Q. Let me ask it a slightly different way. Did you have to -- without saying specifically why you were responding, did you have to respond to the Huber Home Trailer Park?

A. Yes.

* * *

Q. Okay. Why did you respond to Greene County?

A. They had made contact with a Thomas Lawson, who was operating a vehicle that we were wanting to have towed as part of an investigation.

(ECF No. 9-2, PageID ## 619–21 (emphasis added).)  As the state appellate court noted: "No other references were made by the State's witnesses about the specifics of the unrelated Greene County or Riverside investigations."  (ECF No. 9, PageID # 222.)

The state appellate court reasonably concluded that defense counsel did not act deficiently.  Defense counsel objected to Officer Todd's mention of arson, and the Prosecutor had cut off Todd before he said anything else.  (ECF No. 9-2, PageID # 620.)  Defense counsel could have reasonably concluded that drawing any more attention to the exchange, such as by requesting a limiting instruction, would be more harmful than helpful—a trial strategy afforded deference.  As the state appellate court also pointed out, defense counsel performed reasonably by objecting to the State's question on Officer Todd's redirect examination asking if he knew whether the vehicle was stolen.  (ECF No. 9, PageID ## 222–23; ECF No. 9-2, PageID # 639.)

Petitioner also was not prejudiced by defense counsel's performance because counsel made timely objections where appropriate, limiting the information provided.  Though the prosecutor tried to elicit testimony that suggested Petitioner stole the vehicle in question, which might weigh toward being more prejudicial than probative for admissibility purposes, defense counsel immediately objected, which the trial court sustained.  (ECF No. 9-2, PageID # 639.)

The Undersigned finds neither deficient performance nor prejudice, and further finds that the

state appellate court was reasonable in its application of *Strickland* in overruling this claim.

This sub-claim is without merit.

### 7.  Sub-claim 3.7: Counsel failed to object to references of "ounces" rather than "grams" and counsel misstated facts

Petitioner next claims that defense counsel was ineffective for failing to object to the

prosecutor's use of "ounces" instead of "grams" when referencing the amount of drugs found in

the vehicle, and that defense counsel misstated facts.  (ECF No. 1, PageID # 8.)

Respondent's response again relies on the state appellate court decision, and notes the

court found this claim to be meritless.  (ECF No. 10, PageID ## 823–27.)

In Reply, Petitioner contends that failure to object to these references was not a

reasonable trial strategy because it was an "obvious error" that "grew progressively worse" over

the two-day trial.  (ECF No. 13, PageID # 860.)  Petitioner asserts that defense counsel had no

rational reason for failing to object to using "ounces" instead of "grams."  (*Id.*)  Within his

Reply, Petitioner does not appear to address the specific claim that defense counsel misstated

facts.

The state appellate court rejected this claim on the merits as follows:

{¶ 118} Lawson further asserts that counsel rendered ineffective assistance by failing to object to the prosecutor's reference to ounces rather than grams and by misstating the amount of drugs involved due to an error in converting ounces to grams.

{¶ 119} The prosecutor first mentioned "ounces" during opening statements. Specifically, the prosecutor stated:

> * * * When he [Detective Sewert] searched the car, he did, in fact, find guns and dope.  About 68 ounces of Fentanyl.  That's, yeah, pretty much OD everybody in this courthouse and this city.

> * * *

The State through the testimonies of Detective Sewert and Detective Magoteaux, and our BCI scientist, Pamela Farley, are going to establish beyond a reasonable doubt that the items that were seized were 68 grams of Heroin and Fentanyl in one bag, 5.5 grams of Tramadol, Heroin, and Fentanyl in a second bag, and 3.6 of [sic] grams of Methamphetamine.

* * *

You're going to hear how 68 ounces is well beyond personal use. That the only reason someone would have that is for trafficking purposes.

(Trial Tr. at 195-196.)

{¶ 120} During the State's redirect examination of Deputy Major, the prosecutor again referenced ounces, asking, "In your experience as a law office – officer of the law, have you ever heard of a time when someone has abandoned 68 ounces of Fentanyl in a vehicle?" (Trial Tr. at 213.) The prosecutor asked the same question of Officer Todd on redirect examination, as well as similar questions regarding "5.5 ounces of a Heroin, Fentanyl, Tramadol mix" and "3.65 grams of crystal meth." (*Id.* at 237-238.)

{¶ 121} Defense counsel did not object to any of these references to ounces, and the State asserts that defense counsel's failure to object to these apparent misstatements was a matter of trial strategy. The State's opening statement was not evidence, and the prosecutor's use of both ounces and grams may have put the jury on notice that one of those units of measurement was incorrect. Defense counsel could have reasonably determined that the amount of drugs found in the vehicle would be clarified by way of testimony and an objection was unnecessary.

{¶ 122} The prosecutor again misspoke, using ounces instead of grams, during redirect examination. Again, defense counsel could have reasonably concluded that the jury was aware that the prosecutor had mistakenly used "ounces." Defense counsel addressed the matter directly in his cross-examination of Farley, the forensic scientist at BCI, when he asked: "Okay. And the second question is, there's been a lot of units thrown around today in terms of measurement. Everything that you've worked in, everything was in grams; correct?" Farley responded, "Correct." Defense counsel's approach was reasonable.

{¶ 123} Lawson claims that defense counsel rendered ineffective assistance in his questioning regarding the conversion of ounces to grams. During defense counsel's cross-examination of Detective Sewert, the following exchange occurred:

A: Yeah.  He [Lawson], he stated two – I think he stated two ounces is what we would find.

Q: That's correct.  Now, you mentioned that you work in drugs pretty – you have some experience working with drugs, correct?

A: Uh-huh, yes.

Q: And, in fact, you testified the importance of the scale?

A: Yes.

Q: So you're familiar with weights?

A: Yeah.

Q: How many ounces are in a gram?

A: I mean, I'm not a mathematician.  I don't know.

Q: Well, just simple conversions?

A: I don't know.

Q: It's around 0.035; correct?

A: I don't know.

Q: It's much smaller.  In fact, on the street they generally use, what, they would generally say there's 28 times difference; correct?

A: I don't know.

Q: Okay.  And well, let's, let's, let's assume that, that I'm – that I am correct; okay?  So we have approximately 28 times difference. We have approximately 77 grams by the time we add up all three drugs that are of interest here.  So if we were to do that, we come out with over essentially 2,100 ounces.  He referred to two ounces, 0.07, so we're talking about that being a mistake of over 3,000 times the difference in what that – the impression that that would leave; is that correct.

A: If you math is right, yes.

Q: Okay.  And I think you would agree to me, that we need to be candid with the Jury about the amounts, correct, involved?

A: I – yeah, he, he stated two.  What was recorded was the amount.

* * *

Q: * * * [In conducting the search of the vehicle,] you knew about this extremely small amount that he had told you about, the, the approximate 0.07 grams; correct?

A: I knew of the two ounces that he said, yes.

* * *

Q: You have this very, very small amount that you were just going, that you were going to rely on just your vision for.  So, so I guess what I'm getting at, you don't know whether you might have missed somewhere else in the vehicle just that small 0.07 and that might have been the actual amount that he knew about as opposed to the 70 some odd grams?

A: A thorough search of the vehicle was done.  I did not find any other, any other narcotics in the vehicle other than what was in the lunch pail.

(Trial Tr. at 395-399.)

{¶ 124} The State responded to defense counsel's questioning of Sewert regarding the conversion of ounces to grams through the testimony of Captain Magoteaux. The State asked:

Q: And you heard [defense counsel] give an explanation of the conversion of grams to ounces?

A: Correct.

Q: Do you believe that was a correct conversion?

A: No.

(Trial Tr. at 407.)  The prosecutor showed Magoteaux a document that gave an equation for converting grams to ounces (Exhibit 22).  Magoteaux testified that one gram equaled 0.353 ounces and that 77 grams, the approximate amount of drugs found in Lawson's vehicle, equaled 2.7161 ounces.  The State asked Magoteaux if Lawson's statement that Detective Sewert would find about two ounces of drugs was a correct statement.  Magoteaux answered that it was.

56

{¶ 125} Defense counsel addressed his mistake during cross-examination of Magoteaux.

> Q: Okay.  I'll agree, I was incorrect.  I got the numbers flipped there.
>
> A: Yes.
>
> Q: But it still is, is somewhere around a third difference, correct, 2.7 versus two?
>
> A: Yes.
>
> Q: So it's, so it's still a pretty significant difference.  It's not like it was particularly close?
>
> A: I don't know if it's a significant difference, but it, yes, there was a difference.
>
> Q: Yeah.  And about 30 percent or so?
>
> A: Yes.
>
> Q: Okay.  So if you went to the bank, and they were going to give you 30 percent more money than what you had, you would take it, correct?
>
> A: No, I wouldn't.
>
> Q: Huh?
>
> A: If they were going to give me the extra money?
>
> Q: Yeah.  No strings attached.
>
> A: Well, yeah.
>
> Q: Exactly.  So 30 percent can be significant?
>
> A: (Indicating.)

(Trial Tr. at 415-416.)

{¶ 126} Although defense counsel initially made a calculation error in his conversion of ounces to grams, we cannot conclude that this error rises to the level of ineffective assistance of counsel.  Even with the correction by Captain Magoteaux, defense counsel elicited testimony that the difference between two

ounces (the amount Lawson had said would be found in the vehicle) and 2.7 ounces (the amount that was found) could have been a significant difference in quantity. Defense counsel thus successfully elicited testimony to support an argument that Lawson did not knowingly possess all of the drugs found in the car.

*Lawson*, 164 N.E.3d at 1155–58; (ECF No. 9, PageID ## 224–29.)

The Undersigned finds that the state appellate court was reasonable in its determination that defense counsel was not ineffective.  The court first reasoned that failing to object to the prosecutor's use of "ounces" instead of "grams" was a reasonable trial strategy because later questioning could elicit the correct weight.  (ECF No. 9, PageID # 225.)  In fact, defense counsel did confirm the correct weight measurement through cross-examination of BCI analyst Farley. (*Id.*; ECF No. 9-2, PageID # 755.)  Additionally, the state appellate court acknowledged that defense counsel miscalculated the ounces-grams conversion, but through Magoteaux's testimony, the error was corrected.  (*Id.* at PageID ## 225–29.)  The state appellate court reasonably concluded that even with defense counsel's calculation error, it was not so great an error to find ineffective assistance of counsel.  (*Id.* at PageID # 229.)  As noted, though defense counsel misstated facts, the error was corrected, and he further elicited testimony to show a potential "significant difference" in the quantity of drugs Petitioner stated would be found and what was actually found.  (*Id.*)  Based on the double deference afforded to defense counsel's performance and to the state appellate court's decision, the Undersigned agrees that this claim is without merit.

Accordingly, this sub-claim should be dismissed.

### 8.  Sub-claim 3.8: Counsel failed to object to testimony about jail house call

In his final sub-claim, Petitioner contends that defense counsel was ineffective for failing to object to Captain Magoteaux's testimony about recorded jailhouse telephone calls.  (ECF No. 1, PageID # 8.)

Respondent again relies on a recitation of the state appellate court decision and asserts that the claim should be dismissed as meritless.  (ECF No. 10, PageID ## 827–28.)

In reply, Petitioner notes that Respondent relies on "trial strategy as the reasoning for not objecting to the jail house calls."  (ECF No. 13, PageID # 861.)  Petitioner then reiterates that no foundation was laid for introducing this testimony and disagrees with the contention that it was "unknown from this record" whether additional information could be provided about the recordings from Captain Magoteaux.  (*Id.*)  Petitioner asserts that the testimony was clear hearsay, without any corroboration, and defense counsel should have objected to these references.  (*Id.* at PageID # 862.)

The state appellate court rejected this claim as follows:

{¶ 127} Finally, Lawson claims that defense counsel acted deficiently by failing to object to testimony by Captain Magoteaux that he recognized Lawson's voice in jail phone calls. Lawson emphasizes that the recordings of the phone calls were not offered into evidence, there was no corroboration that the calls occurred, and there was no foundation laid as to how Magoteaux would have recognized Lawson's voice. Lawson also states that there was no evidence that defense counsel even knew about the calls, and Lawson states that the record does not show whether he (Lawson) had an opportunity to hear them.

{¶ 128} At the outset, we cannot conclude, on this record, that counsel's pretrial conduct with respect to the recordings was ineffective.  The record indicates that the State's provided discovery to both Lawson's original counsel and to his substitute defense counsel.  In February 2020, defense counsel indicated that he had several discs he needed to review.  The record does not affirmatively show that defense counsel received and reviewed recordings of jail phone calls, but it also does not affirmatively show that he did not.  Accordingly, any alleged ineffectiveness in this regard is more properly raised in a petition for post-conviction relief.

{¶ 129} Defense counsel's decision not to object to Magoteaux's testimony about the phone calls (apparently from jail) was a matter of trial strategy left to counsel's discretion.  "Debatable trial tactics generally do not constitute ineffective assistance of counsel."  *State v. Elmore*, 111 Ohio St.3d 515, 2006-Ohio-6207, 857 N.E.2d 547, ¶ 116.  It is unknown from this record whether Magoteaux would have been able to provide additional information about how he recognized Lawson's voice and whether that information would have been detrimental or beneficial to Lawson.

> Moreover, because the recordings themselves are not in the record, we have no basis to evaluate defense counsel's decision in light of the content of those recordings.

*Lawson*, 164 N.E.3d at 1158 (footnote omitted); (ECF No. 9, PageID ## 229–30.)

Although the state appellate court suggested this claim would be more appropriately raised in a post-conviction action (ECF No. 9, at PageID # 230), the court still reasonably concluded that, based on the record before it, defense counsel's decision to not object to Magoteaux's testimony was a matter of trial strategy. The state appellate court reasonably applied *Strickland* and deferred to defense counsel by determining he used sound professional judgment in deciding not to object. Notably, the court pointed out that further inquiry about how Magoteaux recognized Petitioner's voice *may* have benefitted Petitioner but pressing the issue may have also been to his detriment. (*Id.*) The record does not indicate that a pre-trial motion to limit admission of this evidence would have been successful, which supports the finding that defense counsel did not perform deficiently and that Petitioner was not prejudiced. With the double deference afforded to defense counsel's trial tactics and to the state appellate court decision, the Undersigned finds that both were reasonable.

This claim is without merit and should be dismissed.

### D.    Claim 4: *Brady* Violation

In his fourth ground for relief, Petitioner asserts that the State withheld evidence, constituting a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (ECF No. 1, PageID # 10.) Although he states that the state appellate court had not yet decided this issue (*Id.* at PageID # 11), the Court of Appeals in fact denied the Rule 26(B) motion on April 26, 2021. (ECF No. 9, PageID ## 321–25.)

Respondent contends that Petitioner's *Brady* claim is without merit, or in the alternative, the claim is procedurally defaulted for lack of fair presentment.  (ECF No. 10, PageID # 829.)  Respondent asserts that the *Brady* claim raised in the Rule 26(B) application is different than the claim raised here.  (*Id.* at PageID # 830.)  Pointing to the state appellate court's denial of Petitioner's Rule 26(B) application, Respondent also notes Petitioner cannot establish cause and prejudice to excuse the procedural default.  (*Id.* at PageID ## 830–32.)  Specifically, Respondent asserts that Petitioner's ineffective assistance of appellate counsel claim for failing to raise the *Brady* violation is also procedurally defaulted because it was not appealed to the Ohio Supreme Court after the Court of Appeals denied the Rule 26(B) application.  (*Id.* at PageID # 831.)  Respondent contends that a procedurally defaulted claim cannot serve as cause and prejudice for another procedurally defaulted claim.  (*Id.* at PageID ## 831–32 (citing *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000)).)

Petitioner does not address this claim in his Reply.  (ECF No. 13.)

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to first present those claims to the state courts for consideration.  28 U.S.C. § 2254(b), (c).  If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)).  Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas."  *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

Over time, the term "procedural default" has come to describe a situation where a person convicted of a crime in a state court fails (for whatever reason) to properly present a particular claim to the highest court of the state so that the state has a fair chance to correct any errors made in the course of the trial or the appeal, before a federal court intervenes in the state criminal process.  This fair presentment requirement "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)).  One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted.  In other words, if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court.  As the Supreme Court found in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were *not* resolved on the merits in the state proceeding due to [the] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted."  It is well settled that a "common example of a procedural default is a failure to raise a claim in state court in a timely manner." *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021).

To determine whether procedural default bars a habeas petitioner's claim, courts in the Sixth Circuit engage in a four-part test. *See Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also McNeill v. Bagley*, 10 F.4th 588, 595 (6th Cir. 2021) (citing the four-part *Maupin* standard).  First, the court must determine whether there is a state procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to comply with the rule.  Second, the court must determine whether the state courts actually enforced the state procedural

sanction.  Third, the court must determine whether the forfeiture is an adequate and independent

state ground on which the state can rely to foreclose review of a federal constitutional

claim.  Finally, if the court determines that a state procedural rule was not complied with and the

rule has an adequate and independent state ground, then the petitioner may still obtain review of

his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the

default and (2) that he or she was actually prejudiced by the alleged constitutional error.

*Maupin*, 785 F.2d at 138.  In order to establish cause, a petitioner must show that "some

objective factor external to the defense" impeded the petitioner's efforts to comply with the

state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  The petitioner bears the

burden of showing cause and prejudice.  *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir.

2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)).

 In the instant matter, Respondent asserts that Petitioner's claim is "procedurally defaulted

in multiple ways."  (ECF No. 10, PageID # 831.)  Respondent contends that Petitioner did not

raise a stand-alone *Brady* claim on direct appeal.  Instead, he raised an ineffective assistance of

appellate counsel for failure to raise a *Brady* claim in a Rule 26(B) application.  (ECF No. 9,

PageID # 311.)  In his Rule 26(B) application, Petitioner raised the following assignment of error

and factual support:

> Appellate Counsel was ineffective for failing to raise a Brady violation for the
> State's failure to disclose evidence material to Appellant's guilt in violation of his
> Fifth, Sixth, and Fourteenth Amendment Rights.  This fact is evidence by the
> Appellant's Brief, filed July 20, 2020, which reads:
>
> > "…new trial counsel for appellant indicated that he has experienced
> > difficulties obtaining discovery from prior counsel (Id at 29).  **It was also
> > discussed that new counsel was not aware of potential motion issues,
> > discovery issues and it was made clear that this was not the fault of
> > appellant.**  (Id at 29-33)…" (emphasis added)

(*Id.*)

As noted above, Respondent argues that this assertion is different than the *Brady* claim raised in the instant habeas action.  (ECF No. 10, PageID # 830.)  While Petitioner relies on the same argument—that the State withheld evidence—the Undersigned agrees with Respondent that Petitioner's habeas claim is materially different than the assignment of error raised in the Rule 26(B) application.  In his federal habeas *Brady* claim, Petitioner asserts no more than the "State withheld evidence."  (ECF No. 1, PageID # 10.)  Without more, the Undersigned is not persuaded that his contention constitutes the same "ineffective assistance of appellate counsel" claim raised in the Rule 26(B) application.

Additionally, Petitioner's Rule 26(B) application did not preserve the underlying *Brady* claim.  Raising an ineffective assistance of appellate counsel claim in a state court "does not preserve the underlying claim for federal habeas review because 'the two claims are analytically distinct.'"  *Davie v. Mitchell*, 547 F.3d 297, 312 (6th Cir. 2008) (quoting *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005)); *Malone v. Warden*, No. 1:17-cv-548, 2022 WL 969548, at *14 (S.D. Ohio Mar. 31, 2022).  A Rule 26(B) application preserves for habeas review only the ineffective assistance of appellate counsel arguments because, otherwise, allowing a substantive claim to be raised "would eviscerate the continued vitality of the procedural default rule; every procedural default could be avoided, and federal court merits review guaranteed, by claims that every act giving rise to every procedural default was the result of constitutionally ineffective counsel."  *Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) (quoting *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001)); *Malone*, 2022 WL 969548, at *15–16.  Petitioner, therefore, did not preserve the underlying *Brady* claim by including it as an instance of an ineffective assistance of appellate counsel claim in his Rule 26(B) application.

64

Further, Petitioner failed to appeal the denial of his Rule 26(B) application to the Ohio Supreme Court.  In Ohio, claims of ineffective assistance of appellate counsel must be raised through an application to reopen the direct appeal pursuant to Ohio Rule of Appellate Procedure 26(B).  *State v. Murnahan*, 63 Ohio St.3d 60, 584 N.E.2d 1204 (1992).  The denial of a Rule 26(B) application must be appealed in order to "give the Ohio Supreme Court a full or fair opportunity to rule on it."  *Carter v. Mitchell*, 693 F.3d 555, 565 (6th Cir. 2012) (finding petitioner's failure to appeal initial denial of Rule 26(B) application forecloses habeas review).

Because Petitioner failed to file an appeal of the appellate court's denial of his Rule 26(B) application, he has procedurally defaulted any argument that the ineffective assistance of appellate counsel excuses the default of his underlying *Brady* claim.  *See Edwards*, 529 U.S. at 450–51 (holding that an allegation of ineffective assistance of appellate counsel cannot serve as cause to excuse the default of an underlying claim if the appellate counsel ineffectiveness claim is also defaulted).  The Undersigned notes that, at this juncture, any relief sought in state court related to Petitioner's claim would be untimely.  Ohio S. Ct. Prac. R. 7.01(A)(4)(c) (prohibiting delayed appeals on Rule 26(B) decisions); *see Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009) (requiring that claims be raised at every stage of state review).  Even if Petitioner preserved his *Brady* claim by raising it in his Rule 26(B) application, he cannot point to ineffective appellate counsel as cause to excuse default since that claim itself is procedurally defaulted.

Claim 4 is barred by procedural default.

To the extent Petitioner intended to raise the same ineffective assistance of appellate counsel claim here that he raised in his Rule 26(B) application, and it was not procedurally defaulted, the claim would still be meritless.  Based on the record, the state appellate court found,

and the Undersigned agrees, that Petitioner failed to show his claim had a "reasonable probability" of success if raised on appeal. (ECF No. 9, PageID ## 323–25.) The record shows that the State provided discovery and did not have the alleged exculpatory videos, nor does it appear that the State created the videos. (*See* ECF No. 9-1, PageID ## 385–87.) The state appellate court's denial of his Rule 26(B) application is not an unreasonable decision because it applied the *Strickland* standard in analyzing whether Petitioner's appellate counsel was ineffective in failing to raise the *Brady* claim on direct appeal. (ECF No. 9, PageID ## 323–25.)

Petitioner's fourth ground for relief should be dismissed.

## IV.    Recommended Disposition and Certificate of Appealability Determination

For the foregoing reasons, the Undersigned **RECOMMENDS** that the Petition be **DENIED** and that this action be **DISMISSED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, a District Court must consider whether to issue a Certificate of Appealability ("COA"). A state prisoner who seeks a writ of habeas corpus in federal court does not have an automatic right to appeal a district court's adverse decision unless the court issues a COA. 28 U.S.C. § 2253(c)(1)(A). When a claim has been denied on the merits, a COA may be issued only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). When a claim has been denied on procedural grounds, a COA may be issued if the petitioner establishes that jurists of reason would find it debatable whether

66

the petition states a valid claim of the denial of a constitutional right and that jurists of reason

would find it debatable whether the district court was correct in its procedural ruling.  *Id.*

      Because no reasonable jurist would disagree with this conclusion, the Undersigned

**RECOMMENDS** that Petitioner should not be granted a certificate of appealability.  *Miller-El*

*v. Cockrell*, 537 U.S. 322, 336 (2003); *Moody v. United States*, 958 F.3d 485, 488 (6th Cir.

2020).

### Procedure on Objections

      If any party objects to this *Report and Recommendation*, that party may, within fourteen

days of the date of this Report, file and serve on all parties written objections to those specific

proposed findings or recommendations to which objection is made, together with supporting

authority for the objection(s).  A District Judge of this Court shall make a *de novo* determination

of those portions of the report or specified proposed findings or recommendations to which

objection is made.  Upon proper objections, a District Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions.  28 U.S.C.

§ 636(B)(1).

      The parties are specifically advised that failure to object to the *Report and*

*Recommendation* will result in a waiver of the right to have the District Judge review the *Report*

*and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of

the District Judge adopting the *Report and Recommendation*.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED.**

Date:  <u>June 26, 2023</u>                         <u>s/ *Elizabeth A. Preston Deavers*</u>
                                             Elizabeth A. Preston Deavers
                                             United States Magistrate Judge